Bartl *v.* Crawford Door Sales Co., Appellant.

Argued November 10, 1958.  Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*Glenn A. Troutman,* with him *McWilliams, Wagoner & Troutman,* for defendant.

*Michael Shekmar,* with him *Daniel Sherman,* for plaintiff.

OPINION BY MR. JUSTICE BOK, January 12, 1959:

This is a personal injury case, the question being: whose servant was David Petersen when the accident occurred?

The jury found for the plaintiff against both corporate defendants, and the court below granted judgment n.o.v. as to Building Materials Products Distributors, Inc.  Plaintiff took a voluntary nonsuit as to Petersen, and the verdict against Crawford Door Sales Co. of Philadelphia, Inc., was allowed to stand.  This

company, though now out of business, seeks judgment n.o.v., and plaintiff asks that the verdict be restored against the other corporate defendant.

It takes four corporations to make and sell a door. One supplies lumber; another, hereafter called Building Materials, supplies raw materials; another makes the door; and another, hereafter called Crawford, sells it. David Petersen worked for Building Materials. Plaintiff was an independent contractor and did a great deal of door installation for Crawford. He was doing such a job when he was injured.

With all verdict inferences his way, plaintiff was sent by Crawford to hang a door in a garage. The job involved taking out an old door and removing an eighty-pound beam to which the new door had to be attached. Plaintiff saw that he couldn't do the work alone: the beam was heavy and the floor was so greasy and slippery that he was afraid his ladder would slide and let him down. He therefore called Crawford and spoke to Paugh, its sales manager, telling him that he needed extra lumber and that because of the condition of the floor he wouldn't do the job unless Paugh sent a man to hold the ladder. According to the plaintiff, Paugh said he would send a man to do these things.

When Petersen arrived, plaintiff said to him: "Dave, hold the ladder while I go up there and get that beam off." Petersen held the ladder and plaintiff ascended. He had to remove several bolts and also hold the beam with one hand to prevent its falling. Suddenly he felt the ladder slipping. He turned around and "couldn't see nobody back there." The ladder fell, and as he fell the beam came down on top of him, striking his leg and breaking it.

Five or six minutes elapsed between the time he ascended the ladder and the time he fell. During this period he had to watch his work and had no chance

to look down to see whether Petersen was still holding the ladder.

Under these facts, it is not seriously denied that Petersen was careless. His denial that he was ever told to hold the ladder or that he held it was not credited by the jury. The suggestion of contributory negligence was also rejected.

It is defendant appellant's contention that Petersen was plaintiff's "borrowed employe" and hence his own servant, under the line of cases represented by *McGrath v. Budd Manufacturing Co.*, 348 Pa. 619 (1944) ; *Pennsylvania Smelting & Refining Co. v. Duffin*, 363 Pa. 564 (1950) ; and *Mature v. Angelo*, 373 Pa. 593 (1953).

The complexity of this knotty subject comes in large measure from the complexity of the machinery or process involved in the cases. For example, the *McGrath* case involved placing base plates and anchor bolts and raising steel columns by means of a wire loop and a crane. The *Duffin* case concerns a mobile loading crane: the *Mature* case a large, tractor-like machine with a scoop at its front end for loading.

There are forty-six cases in this Court since 1900 and twenty in the Superior Court since 1920 about borrowed employes. In all but one of these either the machinery was complicated and required skill to operate it normally, or, as in the automobile cases, the need of special skill arose because of ensuing accident situations. The one exception involved digging a ditch.

We feel that the borrowed employe doctrine is not involved in the instant case. The element of unique skill or subtlety is usually the solvent factor and raises the basic question of who has the right to direct the worker how to exercise it. But when no skill or subtlety is needed, there is nothing left in the case but a careful or a careless agent. Any dolt about to hold firm a plain wooden ladder on a greasy floor can see how

to do it as well as the one who asked him, and the right to tell him how to do the job amounts to no more than the right to tell him what to do.

We think that the ordinary rules of agency apply. Petersen worked for Building Materials but was sent by Crawford on this job. There is evidence that Crawford told him to hold the ladder, and if he held it badly, so did Crawford. This evidence, congealed by the verdict, excludes the notion that Petersen was a volunteer or that he was plaintiff's servant. In *Bojarski v. Howlett, Inc.*, 291 Pa. 485 (1928), this Court said: "The doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of the wrong at the time, and in respect to the very transaction out of which the injury arose."

Paugh sent Petersen to hold the ladder and plaintiff asked him, on arrival, to do the very thing he had been sent to do. This is analogous to former Chief Justice STERN's example in *Pennsylvania Smelting & Refining Co. v. Duffin*, supra, (363 Pa. 564 (1950)): "It would be absurd to suppose that a passenger hiring a . . . car . . . with its operator, would become the employer of the operator merely because of telling him what he wanted done." See *Patton v. McDonald*, 204 Pa. 517 (1903); *Wallace v. Keystone Auto Co.*, 239 Pa. 110 (1913); *Scheer v. Melville*, 279 Pa. 401 (1924).

Crawford argues that under its installation agreement with the plaintiff, the latter was to "supply at his own expense all necessary labor." Such an agreement can be modified by words or actions: *Achenbach v. Stoddard*, 253 Pa. 338 (1916); *Mazer v. Kann*, 343 Pa. 376 (1941); *Fisher v. Warakomski*, 381 Pa. 79 (1955).

Recovery against Crawford was proper.

The entry of judgment n.o.v. as to Building Materials must be reversed.

This company knew, through Petersen, Senior, who was an officer in both corporations, that his son delivered the extra lumber for Crawford to the plaintiff. There is also evidence that Building Materials kept a supply of lumber in its yard for Crawford's use; that Crawford bought from it the lumber delivered by Petersen, Junior, to the plaintiff; and that Petersen, Junior, "did such things, spot deliveries", and happened to be present in time to do this one. While there is no evidence that anyone connected with Building Materials told him to hold the ladder, we think that it was for the jury to decide whether his doing so was reasonably in the scope of his employment by that company. We cannot say, as a matter of law, that it was not. He took the lumber to the job under orders from Crawford and with the knowledge of Building Materials; he saw what was needed; and he agreed to do an act, holding the ladder, that was vitally important to the work.

Another factor for the jury was the connection between Crawford and Building Materials. There was common ownership of both and they occupied common offices, with "partitions", as Paugh put it, "but different people." The jury could properly find that both companies stood to profit from the transaction and were jointly interested in it; that Petersen, Junior, acted in the line of duty; and hence that he was the servant of both.

The judgment at No. 251 is affirmed. The judgment at No. 267 is reversed and is now entered for plaintiff on the verdict.