Eugene **WILLIAMS**, Appellant,

v.

**DELTA TRUCK BODY COMPANY, INC.**, Appellee.

No. 89–1168.

United States Court of Appeals, Third Circuit.

Argued July 10, 1989.

Decided Dec. 29, 1989.

Richard A. Weisbord (argued), Weisbord & Weisbord, P.C., Philadelphia, Pa., for appellant.

Fred Greenberg (argued), Hepburn, Willcox, Hamilton & Putnam, Philadelphia, Pa., for appellee.

Before HIGGINBOTHAM, BECKER, and NYGAARD, Circuit Judges.

OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal presents the familiar "borrowed servant" question, i.e., whether a plaintiff seeking a common law damage recovery for personal injuries is the servant of the employer in pursuit of whose activities he was injured, and hence barred

from third party recovery against that employer by the exclusive remedy provisions of the worker's compensation laws, or whether he remains the servant of the employer who "loaned" him, so as to be entitled to bring a third party suit. Because temporary employment services have vastly increased their presence in the labor market, this question arises with considerable frequency.

Appellant Eugene Williams seeks to recover for injuries sustained in a fall in the parking lot of Delta Truck Body ("Delta") that occurred while Williams was working temporarily at Delta through his contract with EDP/TEMPS ("EDP"). Williams was a skilled computer operator placed in charge of Delta's financial computer operations, and given responsibility for training Delta employees in computer skills. After discovery, the district court granted Delta's motion for summary judgment, concluding, under Pennsylvania Law,[1] that Delta was Williams's employer for purposes of the exclusive remedy provision of the Pennsylvania Worker's Compensation Act, 77 Pa. Stat.Ann. § 481 (Purdon Supp.1988) ("the Act"). Under Pennsylvania law, determination of borrowed servant status turns on the application of a multi-faceted·test, the most important aspect of which is the right of the putative borrowing employer to control the manner and method of performance of the employee's work. However, one aspect of Pennsylvania's test focuses on the question whether the putative borrowed servant is a highly skilled specialist who requires no further training in order to perform his duties; if he is, he may be considered independent of the putative borrowing employer's control. That rule is critical in this case.

The district court, after examining the record, concluded that the right of Delta to control the manner and method of Williams's performance was clear. We are not so convinced, particularly in view of the evidence of Williams's considerable expertise in the computer field. Rather, we conclude that there is a genuine issue of material fact as to whether the right of control that Delta enjoyed over Williams was just to tell him what to do or also to tell him how to do it. Under the circumstances we must reverse and remand for further proceedings.

## I.

Williams sustained serious back injuries on December 26, 1985 when he slipped on the ice and fell while walking across the Delta parking lot.[2] Williams received worker's compensation benefits from EDP but filed this negligence action against Delta to recover for his injuries, claiming that EDP was his true employer at the time of the accident. Delta contended that it was Williams's employer and moved for summary judgment based upon the exclusive remedy provisions of the Act. The district court granted the motion, and this appeal followed. The following is a summary of the relevant facts of record.

On September 13, 1985, EDP, whose specialty is furnishing skilled temporary personnel, and Delta entered into a verbal agreement for EDP to assign Williams to Delta. The agreement was for the services of Williams only, and EDP had no right to select or provide other persons to work at Delta. It was anticipated that Williams would work for Delta for approximately two months; in fact, however, Williams worked at Delta for more than three months, from September 16, 1985 through the date of his injury. Williams was to run Delta's financial computer operations until such time as Delta could find a permanent replacement to fill the position. Williams was prohibited by his contract with EDP from accepting direct employment with Delta. EDP also retained the right to withdraw Williams from his job assignment and to assign him elsewhere. Delta did not have the power to hire or fire Williams; this power was reserved to EDP.

---

1. The action is founded upon diversity of citizenship, 28 U.S.C. § 1332 (1982 & Supp.1989).

2. Williams's principal injury was a herniated intervertebral lumbar disc, for which he underwent surgery.

Delta paid EDP a flat hourly rate of $16.00 for Williams's services, from which EDP paid Williams $9.00 per hour and took all of the necessary deductions, including payroll taxes. Delta did not pay unemployment compensation taxes or worker's compensation premiums for Williams; rather, such premiums were paid by EDP, and reimbursed by Delta as part of the flat hourly rate. As noted above, when Williams in fact became entitled to worker's compensation benefits, such benefits were paid by EDP's worker's compensation carrier.

Delta paid no wages to Williams, and he was not entitled to any sick or holiday leave from Delta. When Williams wanted time off, he had to arrange for leave through EDP, and on one occasion such leave was arranged over the objection of Delta. When Delta employees were dismissed because of inclement weather, they were paid for the balance of their day, but Williams was not. Williams was an hourly employee, and the duration of his work at Delta was uncertain. When his schedule at Delta was cut back to 4 to 5 hours per day, EDP agreed to assign him to a concurrent assignment at another job site.

Although the foregoing facts are essentially undisputed, the facts relating to the nature of the training provided to Williams by Delta are not. According to Delta, Williams was trained for two weeks by two of Delta's employees, Cindy Leeland and Jeff Frederick, to perform the specific tasks that he was expected and required by Delta to perform. Delta further asserts that Williams's activities were supervised and controlled by both Haas Patel (Delta's controller) and Anthony Custer (Delta's former Treasurer, a Vice President of Finance). The weekly time card that EDP required Williams to complete and Delta to sign stated: "EDP/TEMPS employee's performance is directly under the customer's supervision and is acceptable to the customer." Further, Kenneth P. Reisman, the general counsel of Technical Aid Corporation, who manages the legal affairs of EDP, stated in an affidavit in support of the motion for Summary Judgment that the agreement between EDP and Delta "entitled Delta to exercise complete control and supervision over the work to be done by Williams and the manner in which it was to be performed." However, there is no specific evidence that EDP exercised control over the work that Williams performed at Delta, or the manner in which that work was performed.

According to Williams's affidavit, Williams trained Delta employees to program and operate its computers. He was already skilled in the operation of such computers and required no specialized training at the assignment site. All he received from Delta was general direction and, having more skill in the computer operation than anyone from Delta, he operated independently and trained Delta employees. In Williams's submission, Delta possessed (and exercised) only the right to tell him what to do, not how to do it:

> I did not receive computer instructions from Delta employees. On the contrary, I provided instruction and training. For a substantial period of time while I was at Delta, I was the only one fully capable of operating the computer program. I was able to provide such training based upon my own skill and experience, and not based upon any training or supervision given to me at Delta by Delta personnel.

(Appellant's affidavit-appendix, p. 3).

We turn to the question whether summary judgment was properly granted, having in mind that summary judgment will be granted only if the moving party demonstrates that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We are also mindful that in making its ruling on summary judgment motion, the court must view all the evidence in the light most favorable to the non-moving party. *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). As in all reviews of summary judgment, our scope of review is plenary. *Erie Telecommunications, Inc.*

*v. City of Erie,* 853 F.2d 1084, 1093 (3d Cir.1988).

## II.

The Pennsylvania courts have established seven principles to be taken into account in determining who shall be deemed a worker's "employer." The controlling principles are as follows:

(1) [O]ne who is in the general employ of one employer may be transferred to the service of another in such a manner that he becomes an employee of the second employer; (2) whether or not the transferred employee becomes the employee of the second employer depends on whether the first employer passes to the second employer not only the right to control the employee's work, but also his manner of performing it; (3) it is enough to establish the employer-employee relationship if the employer has the right to control the employee's manner of performance of work, regardless of whether the right is ever exercised; (4) where one is engaged in the business of renting out trucks and furnishes a driver as part of the hiring of the truck, there is a presumption that the driver remains in the employ of his original employer until there is evidence that the second employer in fact assumed control over the employee's manner of performing his work; (5) facts which indicate that an employee remains in the service of his original employer include the original employer's right to select the employee to be loaned and to discharge him at any time and send another in his place, the loaned employee's possession of a skill or special training required by the work for the second employer, and employment at a daily or hourly rate for no definite period; (6) the fact that the second employer designates the work to be done and where it is to be done does not militate against the first employer-employee relationship; and (7) when the facts are undisputed, the determination of who is the employee's employer is one of law, but when the facts are disputed, the determination is one of fact.

*Daily Express, Inc. v. W.C.A.B.,* 46 Pa. Cmwlth. 434, 436–37, 406 A.2d 600, 601–02 (1979) (summarizing the holdings of *Mature v. Angelo,* 373 Pa. 593, 97 A.2d 59 (1953)); *see also Accountemps v. W.C.A.B. (Myers),* 120 Pa.Cmwlth. 489, 548 A.2d 703 (1988).

Although there is no evidence in the record that Delta ever actually exercised control over or extensively supervised Williams's performance, "[i]t is enough to establish the employer-employee relationship if the employer has the right to control the employee's manner of performance of work, regardless of whether the right is ever exercised." *Daily Express,* 46 Pa. Cmwlth. at 437, 406 A.2d at 602. This right of control must be meaningful, however, and when the skill of the employee determines that actual control cannot be exerted, a right to control is meaningless in practical terms. This point was developed in *Mature,* where the Court found it unlikely that the borrowing employer will control the manner of performance of the work "where neither the person . . . nor his own employees, are competent to run such a machine and merely direct the operator concerning the work to be done." *Mature,* 373 Pa. at 600, 97 A.2d at 62; *see also Bartl v. Crawford Door Sales Co.,* 394 Pa. 512, 147 A.2d 399 (1959); *Restatement (Second) of Agency* § 227 comment c (1958) ("[A] continuation of general employment is indicated [in part] by the fact that . . . the lent servant has the skill of a specialist.").

Turning to the details, if Williams was, as he insists, a highly skilled specialist requiring no further training or detailed instructions in order to perform his duties, he might be considered independent of Delta's actual control or their right of control. *See Accountemps,* 120 Pa.Cmwlth. at 491–94, 548 A.2d at 705–06. Conversely, if Williams required training and initial supervision rather than merely general directions indicating company goals, this would be a significant factor in determining Delta's responsibility as an employer. *See English v. Lehigh County Authority,* 286 Pa.Super. 312, 428 A.2d 1343 (1981). Specifically, Williams contends in his affi-

davit that he performed highly skilled work training Delta employees and that he required no specialized training at the assignment site. Furthermore, as we have noted, Williams stated that he was the only one at Delta capable of running the computer program and did so based on his own experience.

■ Williams acknowledged receiving direction from Delta so that he could understand the goals he was hired to achieve. However, simply designating tasks to be completed does not establish that the current employer has control over the manner in which those duties are completed:

> [A]nyone who engages the service of a technician or specialist ... must of necessity indicate to him from time to time the work that he wishes done ...[;] however, .. the giving of such directions does not bring the hired servant into *his* employ and make *him* responsible for the *performance* of the work.

*Mature*, 373 Pa. at 600–01, 97 A.2d at 62–63 (emphases in original). Pennsylvania law thus draws a distinction between the tasks to be done and the skills to be performed; Williams asserts that the tasks were designated but that his personal skills enabled him alone to undertake these duties. Williams also relies on the fact that EDP, not Delta, had the power to hire and fire him and grant him leave.

■ Delta has adduced countervailing evidence—that Williams was trained for two weeks by two of Delta's employees to perform the specific tasks that Delta expected and required him to perform; that his activities were supervised and controlled by Delta personnel; and that Williams and EDP acknowledged Delta's right of supervision. We thus have contradicting statements, which create a factual dispute. In view of the applicable legal test, the dispute is over material facts. Therefore, the summary judgment will be reversed and the case remanded for trial.