**Edward Francis SKLODOWSKI, Jr., Administrator of the Estate of Edward Francis Sklodowski, III, Deceased,**

v.

**SCOTT PAPER CO.**

v.

**ISAAC WATKINS COMPANY, INC.**

**Civ. A. No. 89–5177.**

United States District Court,
E.D. Pennsylvania, C.D.

Sept. 6, 1990.

Stanley B. Gruber, Philadelphia, Pa., for plaintiff.

Patrick W. Kittredge, Philadelphia, Pa., for defendant Scott Paper Co.

Madeline M. Sherry, Philadelphia, Pa., for defendant Isaac Watkins Co., Inc.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

This diversity action arises out of the electrocution of Edward F. Sklodowski, III, plaintiff's decedent, ("Sklodowski") while working at defendant's office building.[1] Defendant Scott Paper Company ("Scott") has moved for summary judgment claiming immunity from suit under the Pennsylvania Workmen's Compensation Act. The court heard oral argument on August 30, 1990, as to whether Scott was Sklodowski's employer for purposes of the act. For the reasons stated below, we grant defendant's motion.

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.

---

1. The court notes jurisdiction under 28 U.S.C. § 1332.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law.[2] *Id.* at 248, 106 S.Ct. at 2510. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985).

On motion for summary judgment, the moving party bears the initial burden of identifying for the court those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party —plaintiff, in this case—must respond with facts of record that contradict the facts identified by the movant, and may not rest on mere denials. *Id.* at 321 n. 3, 106 S.Ct. at 2552 n. 3 (quoting Fed.R.Civ.P. 56(e)); *see First National Bank of Pennsylvania v. Lincoln National Life Insurance Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

The following facts are undisputed. On April 23, 1987, Scott decided to supplement its own electrical crew and entered into an agreement with Isaac Watkins Co., Inc. ("IWCO"), an electrical contractor, who provided Scott with electricians and helpers.[3] Sklodowski was one of the helpers IWCO furnished to Scott. The position of helper required no special training, and IWCO did not train or test any of its em-

ployees. (Plaintiff's Answer to Motion for Summary Judgment at ¶¶ 5, 7).

No IWCO personnel supervised the IWCO employees at the Scott jobsite. *Id.* at ¶ 9. Indeed, IWCO was not aware of the actual jobs to which its helpers were assigned, and had not discussed the Scott assignment with Sklodowski. *Id.* at ¶¶ 13, 19. IWCO relied on Scott to instruct IWCO personnel regarding any possible work-related dangers. *Id.* at ¶ 15.

On June 23, 1988, Sklodowski and two other helpers reported to work at Scott and received their job assignments from one of Scott's employees, Edward Lafferty. Lafferty took Sklodowski to the sixth floor of the Scott Plaza II Office Building and showed him a light switch that needed to be taken out. Lafferty told Sklodowski there were junction boxes above the ceiling tile from which wires would have to be removed. He did not specifically instruct Sklodowski on how to disconnect the hot wires. After asking Sklodowski if he had any problem with the assignment and allegedly receiving a negative response, Lafferty left Sklodowski alone. Twenty minutes later, Sklodowski was fatally electrocuted.

Plaintiff Edward F. Sklodowski, Jr., as administrator of his son's estate, instituted this negligence action against Scott requesting compensatory and punitive damages. Scott contends that workmen's compensation is plaintiff's exclusive remedy.

Under the Pennsylvania Workmen's Compensation Act, employers covered by the statute are entitled to immunity from common law suits arising from work-related injuries.[4] The issue before the court on

---

2. Pennsylvania law dictates the court's decision in this case. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3. The timeframe specified in the purchase order embodying Scott's and IWCO's agreement was May 1, 1987, through April 30, 1988. (Defendant's Brief, Exhibit A) On April 17, 1988, IWCO requested an increase in the hourly rates stated in the purchase order. No new purchase order was drafted, but Scott began paying IWCO at the new rates. Neither side disputes that their agreement was in effect at the time of Sklodowski's injury on June 23, 1988.

Under the terms of the purchase order agreement, Scott had the right to impose additional safety standards upon IWCO personnel, and IWCO needed Scott's approval to remove IWCO personnel from defendant's worksite.

4. The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death.... Pa.Stat.Ann. title 77, § 481(a) (Purdon Supp. 1990).

summary judgment is whether defendant is an employer for purposes of the Workmen's Compensation Act.[5]

Where the facts are not in dispute and inconsistent inferences cannot reasonably be drawn from the evidence, "the question as to who is the servant's employer is a matter for the determination of the court." *Mature v. Angelo*, 373 Pa. 593, 598, 97 A.2d 59, 61 (1953); *see also Venezia v. Philadelphia Elec. Co.*, 317 Pa. 557, 177 A. 25 (1935) (court determined who was the employer under workmen's compensation statute).

Defendant argues it was Sklodowski's employer for workmen's compensation purposes by virtue of the "borrowed employee" doctrine, an outgrowth of the common law concepts of master and servant. Under this doctrine, the "vital test" for determining whether Sklodowski was defendant's employee "is whether [he was] subject to its control or right of control not only with regard to the work to be done but also with regard to [his] manner of performing it." *Venezia*, 317 Pa. at 559, 177 A. at 26. The Pennsylvania Supreme Court later made clear that the potential power to control the employee is the es-

sence of the test, noting an employer was "the person who has the *right* of controlling the manner of his[a servant's] performance of the work, irrespective of whether he actually *exercises* that control or not." *Mature*, 373 Pa. at 596, 97 A.2d at 60 (emphasis in original).[6]

While Scott may not have exercised enough control over Sklodowski's performance of his work, we find Scott had the right of controlling it, and is therefore his employer for workmen's compensation purposes. Sklodowski was a helper, not a specialist or a skilled technician. He received his assignment and minimal directions from a Scott representative. A Scott representative decided Sklodowski would work alone. Although IWCO paid Sklodowski's hourly wages and selected him for the Scott project, IWCO needed Scott's approval to remove Sklodowski once he was placed. No IWCO personnel trained Sklodowski for his assignment, and no IWCO personnel were present on the jobsite to supervise Sklodowski.[7]

More recently than the state supreme court, the Pennsylvania Superior Court persuasively applied the "borrowed employee" doctrine test in a workmen's compensation

---

**5.** The term "employer," as used in this act, is declared to be synonymous with master, and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it. Pa.Stat.Ann. title 77, § 21 (Purdon 1952).

**6.** Plaintiff's counsel has not cited any cases, nor have we found any, to support his argument that the right-of-control test requires a threshold analysis of the contract between IWCO and Scott, the purpose for which IWCO labor was sought, and the consequent propriety of Scott assigning Sklodowski to remove the light switch. Plaintiff's formulation of the standard focuses incorrectly upon defendant's negligence, not defendant's ability to control.

**7.** Although plaintiff does not directly argue that IWCO was Sklodowski's employer, this must be plaintiff's position since plaintiff denies Sklodowski's employer was Scott. As the third circuit has phrased the borrowed employee question, it is "whether a plaintiff seeking a common law damage recovery for personal injuries is the servant of the employer in pursuit of whose

activities he was injured, ... or whether he remains the servant of the employer who 'loaned' him." *Williams v. Delta Truck Body Co., Inc.*, 892 F.2d 327, 327–28 (3d Cir.1989).

Scott's position that it was Sklodowski's employer is further strengthened by the uncontroverted deposition testimony of Jeffrey Watkins, IWCO's executive vice president and the person in charge of the agreement with Scott.

Q: It's clear that somebody from Scott had the right, at least, to control or direct the manner in which the Isaac Watkin personnel performed their tasks at Scott, correct?
A: To my understanding, yes.

. . . . .

Q: Did you feel it was necessary for you in any way to inspect the job site?
A: I was not in control of the job sites. I had no authority.
Q: Did Scott tell you that you didn't have any authority?
A: No, they did not. I just assumed that.
Q: Why did you assume that?
A: They're working under the supervision of Scott people. They were directing them what to do.
Walker Deposition at 90:1–6, 93:23–25—94:1–8.

context not dissimilar to this case.[8] In *English v. Lehigh County Auth.*, 286 Pa. Super. 312, 428 A.2d 1343 (1981), the court had to decide whether the Authority or Kelly Labor, a temporary agency, was the employer of plaintiff's decedent, Thomas English. Kelly Labor had a contract with the Authority to supply labor for a sewage sampling project. After Kelly Labor placed English with the Authority, English reported to an Authority employee who directed him to the sewage metering station ten miles away and told him to take samples every half hour. English died from inhalation of noxious sewage fumes.

The court found the Authority to be English's employer, and affirmed the grant of summary judgment. 286 Pa. Super at 323, 428 A.2d at 1349. Like IWCO in the present case, Kelly Labor had no onsite personnel and did not train English for the Authority assignment. Like Scott, the Authority did not exercise much control over how the fatal assignment was performed. Emphasizing the existence of the right to control over its actual exercise, the court reasoned:

> Although it is true that the Authority did not exercise much control over the sampling project, had it chosen to, it could have exercised complete control; it could have required for instance, that anyone entering the "pit" wear a gas mask; that no more than one worker enter the pit at any one time; that the workers "phone-in" after each sampling; and that emergency air supplies be readily accessible to those who entered the pit. The fact that the Authority did not exercise such control demonstrates, not its lack of authority, but its negligence.

286 Pa.Super. at 312, 428 A.2d at 1350.

Likewise, plaintiff's argument that Scott was unaware of electrical safety regulations when it assigned Sklodowski to remove the light switch supports a finding of negligence, not one of no control.

Plaintiff contends Scott was not Sklodowski's employer because Scott did not employ "sufficiently competent supervisors as to be able to exert a 'meaningful' right of control." (Plaintiff's Brief at 32). Plaintiff relies on "meaningful" as that term was used by the third circuit in *Williams v. Delta Truck Body Co., Inc.*, 892 F.2d 327 (3d Cir.1989). The *Williams* court reversed a grant of summary judgment to a borrowing employer who sought a highly skilled temporary computer specialist to train its employees. Weighing evidence of Williams' expertise that rendered him independent of Delta Truck's right of control, the court observed, "This right of control must be meaningful, however, and when the skill of the employee determines that actual control cannot be exerted, a right to control is meaningless in practical terms." 892 F.2d at 330.

The holding in *Williams*, however, is inapplicable to the facts of this case. *Williams* focused on the job skills of the borrowed employee, not the supervisory abilities of the borrowing employer. In the instant case, Sklodowski worked as a helper, a position that required minimal expertise. Scott could have shown plaintiff how to perform his assigned task; Delta Truck could not have shown Williams how to run the computer program and teach its employees.

Plaintiff has not responded to Scott's motion for summary judgment with any facts of record that contradict Scott's claim of employer status under workmen's compensation. Nor has plaintiff identified a factual dispute that would affect our application of the borrowed employee doctrine under Pennsylvania law. Defendant's motion for summary judgment is therefore granted.

---

**8.** Although we are not bound by Pennsylvania Superior Court opinions, in the absence of any indication that the highest state court would rule otherwise, decisions of intermediate appellate courts are evidence of state law and must be given significant weight. *General Elec. Credit Corp. v. Ger–Beck Mach. Co.*, 806 F.2d 1207, 1209 (3d Cir.1986).