NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-2024

EDWARD P. O'DONNELL
MICHELLE O'DONNELL,

Appellants

v.

NEW ENGLAND MOTOR FREIGHT; TRANSFORCE, INC.;
and TRANSPORT LEASING/CONTRACT, INC.,

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 06-cv-1068)
District Judge:  Honorable John E. Jones, III

Submitted Under Third Circuit L.A.R. 34.1(a),
March 23, 2010

Before:  RENDELL, FUENTES, and JORDAN, *Circuit Judges*.

(Filed: April 7, 2010 )

OPINION OF THE COURT

FUENTES, *Circuit Judge*:

Appellants, Edward O'Donnell and Michelle O'Donnell, filed a personal injury action asserting claims for negligence and loss of consortium against Appellee New England Mother Freight, Inc. ("NEMF") arising out of injuries Edward O'Donnell ("O'Donnell") sustained in an accident at NEMF's truck terminal. NEMF filed a third-party complaint against Appellee Transforce, Inc. ("Transforce") asserting claims of indemnification, contribution, and breach of contract. Transforce asserted counterclaims against NEMF and filed a fourth-party complaint against Appellee Transport Leasing/Contract, Inc. ("TLC") asserting claims of indemnification and breach of contract. Transforce and TLC moved for summary judgment on the ground that all Defendants were immune from suit under the Pennsylvania Workers' Compensation Act because O'Donnell was a "borrowed servant" of NEMF at the time of the accident. Concluding that under Pennsylvania law, O'Donnell was a borrowed servant of NEMF, the District Court granted the motions for summary judgment and entered judgment in favor of all Defendants. For the reasons that follow, we will affirm.[1]

## I.

Because we write primarily for the parties, we only discuss the facts and proceedings to the extent necessary for the resolution of the case.

NEMF is a trucking company with a terminal in Lehightown, Pennsylvania.

---

[1] The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. "We review a grant of summary judgment de novo, and thus apply the same standard as that used by the District Court." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 580–81 (3d Cir. 2009) (citation omitted).

Transforce is a staffing company that leases drivers to the transportation industry. At all relevant times, NEMF and Transforce were parties to an agreement by which Transforce would provide NEMF with temporary drivers during peak business periods. TLC is a professional employer organization that handles payroll, workers' compensation insurance, and other human resources functions. Transforce contracted with TLC to screen and perform background checks on potential employees. Transforce considered leased drivers to be its employees, in the common sense of the word. Leased drivers were paid by Transforce (although the payroll was done by TLC) and could be terminated by Transforce. Transforce also provided benefits, including workers' compensation insurance, to leased drivers. If a leased driver did not like an assignment, Transforce would attempt to accommodate the transfer request.

When NEMF needed a temporary driver, it would contact Transforce with a description of the assignment. NEMF had to approve any leased driver provided by Transforce. Once the driver was approved, NEMF would determine the driver's work assignments and direct performance of his job duties. An NEMF supervisor would approve the driver's time cards, which were sent to Transforce for payment. Although it could not terminate a leased driver's employment with Transforce, NEMF could terminate the leased driver's assignment with NEMF. Pursuant to the terms of the agreement, a leased driver was an employee of Transforce, not an NEMF employee.

O'Donnell responded to a Transforce advertisement for drivers. Transforce sent him a TLC application packet, which he received and completed. O'Donnell then met

with the Transforce branch manager, Larry Heinly, who forwarded the application to TLC for processing. Soon thereafter, Heinly called O'Donnell and asked him if he was interested in a yard jockey assignment with NEMF. A yard jockey is a driver who moves loaded and unloaded trailers around NEMF's premises. O'Donnell said that he was interested, and Heinly contacted NEMF.

On the day of the accident, O'Donnell reported to NEMF's Leighton terminal. The parties' characterizations of what occurred next differ, but the essential facts are not in dispute.[2] Heinly recalled that NEMF wanted to interview and test O'Donnell before putting him to work. David Hillman, the manager of the NEMF terminal, recalled that he greeted O'Donnell and then almost immediately passed him off to the operations manager. He stated that he did not interview Transforce drivers as Transforce was to have already interviewed them. O'Donnell recalled that he had a discussion/interview with a manager when he first arrived at NEMF.

Next, Wilbur Green, a yard jockey on duty at the time, demonstrated the operation of the yard horse (a small tractor used to move trailers around the terminal yard). O'Donnell then operated the yard horse himself, although the parties disagree whether this constituted a test, training, or neither. Thereafter, Green resumed operation of the yard horse to show O'Donnell how to back a trailer into the docking area. O'Donnell was standing behind the cab of the yard horse on a small platform. O'Donnell and Green

---

[2] As the District Court did in the first instance, when the facts are in dispute, we review the record and draw all inferences in the light most favorable to O'Donnell, the nonmoving party. *Am. Eagle Outfitters*, 584 F.3d at 581.

-4-

disagree regarding whether Green directed O'Donnell to stand in that location, but this dispute is not material. O'Donnell became pinched between the yard horse and the trailer and was injured. Following the accident, O'Donnell applied for and received workers' compensation benefits from TLC.

## II.

The Pennsylvania Workers' Compensation Act is the "the exclusive means for obtaining compensation for injuries which has been substituted for common law tort actions between employees and employers." *Shick v. Shirey*, 716 A.2d 1231, 1237 (Pa. 1998) (citation omitted); *accord* 77 Pa. Cons. Stat. Ann. § 481(a). Thus, if NEMF was O'Donnell's "employer" at the time of the accident, O'Donnell's personal injury action is barred. Where an employee is furnished by one entity to another, the "borrowed servant" doctrine applies. The Pennsylvania Supreme Court has described this doctrine as follows:

> The test for determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it. The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised. Other factors which may be relevant include the right to select and discharge the employee and the skill or expertise required for the performance of the work. The payment of wages may be considered, but is not a determinative factor.

*JFC Temps, Inc. v. Workers' Compensation Appeal Bd.*, 680 A.2d 862, 864 (Pa. 1996) (internal citations omitted). "[T]he right to control the performance of the work is the overriding factor." *Id.* at 865. As long as the material facts are undisputed, "[t]he question of whether an employer-employee relationship exists is one of law." *Id.* at 864

-5-

(citation omitted).

In a thorough opinion, the District Court correctly concluded that, as a matter of law, under the "borrowed servant" doctrine, NEMF was O'Donnell's employer at the time of the accident. While Transforce retained some control over O'Donnell, NEMF exercised control over O'Donnell's performance of the work at the NEMF facility, the key inquiry. *See English v. Lehigh County Auth.*, 428 A.2d 1343, 1349 (Pa. Super. Ct. 1981). Contrary to O'Donnell's argument, the fact that NEMF had not yet formally "hired" him is irrelevant. O'Donnell was not volunteering at NEMF, and his presence at the facility was for NEMF's benefit. *See Kirk v. Commonwealth, Unemployment Compensation Bd. of Review*, 442 A.2d 1234, 1235–36 (Pa. Commw. Ct. 1982). Accordingly, NEMF was a borrowing employer for the purpose of the Workers' Compensation Act, and O'Donnell's claims are barred.

**III.**

For the foregoing reasons, we affirm the District Court's Memorandum and Order granting Defendants' motions for summary judgment and entering judgment in favor of Defendants.