**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2728
_____

THOMAS OCHS; LAURA OCHS, H/W,
Appellants

v.

READING HOSPITAL

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 5-14-cv-04017)
District Judge: Hon. J. William Ditter, Jr.
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 23, 2016
_____

Before: GREENAWAY, JR., VANASKIE, and SHWARTZ, Circuit Judges.

(Filed: April 19, 2016)
_____

OPINION*
_____

SHWARTZ, Circuit Judge.

_____

　　* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Thomas Ochs ("Ochs") and his wife Laura Ochs (together, "Plaintiffs") appeal the District Court's grant of summary judgment to Reading Hospital ("the hospital") in their personal injury suit, challenging the District Court's determination that the hospital was Ochs's statutory employer under the Pennsylvania Workers Compensation Act ("PWCA") and immune from suit. For the following reasons, we will affirm.

I

Ochs was a contractual employee of AMN Healthcare ("AMN"), a healthcare staffing company. AMN placed Ochs at the hospital for a one-month period to assist the hospital in its transition to a new health record software platform called "Epic." The hospital assigned Ochs to a specific unit, selected his work schedule, and approved his timecards. AMN paid Ochs, withheld taxes, and maintained workers' compensation coverage. Only AMN could terminate Ochs, but the hospital had the authority to remove him from his assignment if it was unsatisfied with his work.

When Ochs began work at the hospital, he was required to attend a one-day orientation detailing hospital policies and procedures that consultants like Ochs were required to follow and two days of training on the hospital's unique version of Epic, created and led by hospital employees. Ochs had experience with Epic but acknowledged that this training was necessary because the hospital had customized the program.

Ochs was required to comply with a dress code and to wear a vest and badge bearing the hospital's logo. He reported directly to his assigned unit for his designated

2

shift and was required to check in with a hospital supervisor. Ochs typically spent time near the nurse's station answering questions from hospital employees about how to use the new software. While Ochs would approach hospital employees who were "looking confused," he was also directed by hospital supervisors to assist specific employees. App. 39. An AMN liaison was on-site at the hospital to answer administrative questions from the consultants at the beginning of each shift, but no AMN representative supervised Ochs's daily activities. Epic-trained hospital employees were also available to answer substantive questions from AMN consultants such as Ochs about the hospital's Epic program.

Several days after starting at the hospital, Ochs tripped and fell on steps at the hospital and was injured. Plaintiffs sued the hospital alleging negligence. The District Court granted the hospital's summary judgment motion, reasoning that the hospital was immune from suit under the PWCA because it controlled the relevant aspects of Ochs's work, and hence was his employer. Plaintiffs appeal.

## II[1]

The District Court correctly concluded that Ochs was a "borrowed servant" as a matter of law, making the hospital his employer under the PWCA and thus statutorily immune from suit.

Employees who are injured at work are limited to the compensation available to them under the PWCA and cannot separately sue their employers for personal injury. See 77 Pa. Cons. Stat. § 481(a) (2002) ("[L]iability of an employer under this act shall be exclusive and in place of any and all other liability to such employees[.]"). This immunity from suit extends from the direct employer to another entity that has "borrowed" the employee if the latter exercises sufficient control over the employee. See Claudio v. MGS Mach. Corp., 798 F. Supp. 2d 575, 581 (E.D. Pa. 2011). According to the Pennsylvania Supreme Court,

> [t]he test for determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it. . . . Other

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment. Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007). In doing so, we apply the same standard as the District Court, viewing facts and making reasonable inferences in the non-movant's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-movant. Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

4

factors which may be relevant include the right to select and discharge the employee and the skill or expertise required for the performance of the work.

JFC Temps, Inc. v. Workmen's Comp. Appeal Bd. (Lindsay), 680 A.2d 862, 864 (Pa. 1996) (internal citations omitted). "Although opinions . . . frequently mention such items as which employer actually hired the servant, and which paid his wages . . . these are peripheral matters and not controlling." Wilkinson v. K-Mart, 603 A.2d 659, 661 (Pa. Super. Ct. 1992); see also JFC Temps, 680 A.2d at 864 ("The payment of wages may be considered, but is not a determinative factor."). The central inquiry is who has the right to control and direct the manner of the employee's work.

The undisputed facts here demonstrate that the hospital had the right to, and did, control the manner of Ochs's daily work. While Plaintiffs argue that Ochs could be viewed as "directing Reading Hospital's staff" rather than the other way around due to his teaching role, Appellants' Br. at 15, this ignores the many ways in which the hospital directed Ochs's activities. The hospital trained Ochs and could choose to terminate his assignment there. Ochs reported to hospital personnel on a daily basis who instructed him on when and where to work, required him to abide by hospital policies, dictated his dress code, and directed him to assist specific hospital staff in using the hospital's customized software. Such facts are typically sufficient to establish control over the manner of an employee's work. See, e.g., Claudio, 798 F. Supp. 2d at 582 (applying borrowed servant doctrine where employer assigned work location and specific jobs to

5

employee, provided training, dictated the dress code, required he wear identification badge with its logo, and "could . . . end [his] assignment . . . if dissatisfied with his work"); O'Donnell v. New England Motor Freight, Inc., No. 4:06-CV-1068, 2009 WL 674131, at *5 (M.D. Pa. Mar. 13, 2009) (applying doctrine where employee "reported to" employer, "used equipment supplied by" it, and employer determined his work hours and assignments, approved time cards, and could "terminate his assignment"), aff'd, 373 F. App'x 182 (3d Cir. 2010) (not precedential); Zaragoza v. BASF Const. Chems., LLC, No. 08-96, 2009 WL 260772, at *3 (E.D. Pa. Feb. 3, 2009) (applying doctrine where employee reported directly to the employer daily, received training, hours, and work assignments from its personnel, used its equipment, and wore name badge with its logo). These undisputed facts show that the hospital controlled the work that Ochs performed and the manner in which he performed it.

Moreover, there is no dispute that AMN did not provide ongoing direction to Ochs. AMN's "largest responsibility in relation to [Ochs's] work was his placement in the services of [the hospital]. After placement, at no point did [it] purport to instruct [Ochs] on how he should carry out his work assignments[.]" Id. at *5. In fact, the interaction between Ochs and AMN was limited to an initial screening phone call with a recruiter, selecting him to work at the hospital, exchanging employment paperwork, paying his wages, and supplying insurance. These facts show the limited role AMN played in Ochs's work for the hospital. See JFC Temps, 680 A.2d at 866 (citing fact that

6

staffing agency "did not instruct [the employee] regarding the performance of his work[ ] . . . [and] had no substantial contact with [him] other than processing his paycheck."). That AMN had the exclusive ability to discipline and terminate him also does not undermine the fact that the hospital exercised day-to-day control over the manner of Ochs's work. See Claudio, 798 F. Supp. 2d at 582-83 (staffing agency's role in hiring employee, paying his salary and workmen's compensation benefits, and its sole ability to discipline or terminate him, were "of limited weight" in the analysis).

While AMN's contract with the hospital specified that consultants provided under the agreement would "for the purposes of th[e] Agreement, be considered employees of" AMN, App. 19, "[i]t is well settled under Pennsylvania law that parties are not bound by their characterization of the employee-employer relationship." Zaragoza, 2009 WL 260772, at *4 (citing Red Line Exp. Co. v. Workmen's Comp. Appeal Bd. (Price), 588 A.2d 90 (Pa. 1991)); see also Wilkinson, 603 A.2d at 662 (although contract indicated that logistics company lending drivers remained their employer, this was outweighed by the reality of the receiving company's control over the drivers). The facts show Ochs was loaned to the hospital as a borrowed servant and it was his employer under the PWCA.

Plaintiffs' reliance on Williams v. Delta Truck Body Co., does not change the result. In Williams, this Court examined whether a highly skilled specialist who required no training to perform his duties should be viewed as "independent of the putative

7

borrowing employer's control." 892 F.2d 327, 328 (3d. Cir. 1989). The significance of an employee's special expertise has since diminished under Pennsylvania law. Seven years after Williams, the Pennsylvania Supreme Court has suggested that an employee's status as a specialist is not determinative of whether he is a borrowed servant, but rather is a factor to consider in determining the presence of the requisite control. JFC Temps, 680 A.2d at 866 (declining to adopt a blanket rule that exempts specialized employees from the borrowed servant doctrine).

Moreover, even if it remains unaffected by JFC Temps, Williams is inapposite. Williams, a computer expert placed in charge of a company's financial computer operations, claimed that "he required no specialized training at the assignment site[,] . . . was the only one at [the site] capable of running the computer program and did so based on his own experience." Williams, 892 F.2d at 331. In contrast, Ochs acknowledges that he received several days of training on hospital procedures and the hospital's specific implementation of Epic, and hospital employees familiar with the hospital's customized Epic software were available to answer Ochs's questions. See JFC Temps, 680 A.2d at 865 (temporary driver who already possessed driving skills was still subject to control because employer directed him in how to go about making deliveries, required him to check in daily, completed his time sheets, and evaluated his performance). Thus, any pre-existing expertise Ochs may have had does not alter the conclusion that the hospital had the right to control the manner of his work.

8

## III

For the foregoing reasons, we will affirm the District Court's order granting summary judgment to Reading Hospital.