680 A.2d 862

**JFC TEMPS, INC., Appellant,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD
(LINDSAY and G & B Packing), Appellees.**

Supreme Court of Pennsylvania.

Argued April 29, 1996.

Decided July 31, 1996.

Joseph S. Bekelja, Sandra R. Craig, Philadelphia, for JFC Temps, Inc.

Norman Haigh, Secretary, for W.C.A.B.

Eric J. Weiner, Harrisburg, for Lindsay.

Paul L. Zeigler, Camp Hill, for G & B Packing.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

ZAPPALA, Justice.

In this workers' compensation case, we must determine whether G & B Packing (G & B) or JFC Temps, Inc., (JFC) is responsible for the payment of workers' compensation benefits due the claimant, Alonzo Lindsay (Claimant). JFC is a temporary employment agency which hired Claimant and assigned him to G & B, a warehousing company, to drive a tractor-trailer. On March 18, 1988, while exiting the cab of a G & B truck,[1] Claimant slipped and fell. Tests taken a few days later revealed blood clots in Claimant's leg. Complications arose and Claimant's leg was amputated.[2]

Claimant subsequently filed a claim petition seeking compensation from JFC. JFC joined G & B as an additional defendant. At a hearing before a referee,[3] it was determined that the amputation of Claimant's leg was causally related to his fall from the truck and that JFC was the entity responsible for paying the claimant's workers' compensation benefits. Total disability benefits were awarded. The Workmen's Compensation Appeal Board affirmed the award of benefits but reversed the referee's determination that JFC was Claimant's employer at the time of the injury. It found that the control and supervision of Claimant's performance as a truck driver was in the hands of G & B.

Both JFC and G & B appealed to the Commonwealth Court, contending that Claimant did not meet his burden of proving a compensable injury. G & B also contended that the Board erred in finding it to be the responsible employer. The Commonwealth Court found that substantial competent evi-

1. G & B leased the truck from Ryder Truck Rental.

2. Claimant pursued a third party negligence action with regard to medical treatment which led to the amputation. The litigation was settled for $115,000.00.

3. This case was heard prior to the enactment of Act 44 of 1993 in which the title of referee was changed to "workers' compensation judge." 77 P.S. § 701.

dence existed to support the referee's finding that Claimant's disability was causally connected to his fall from the truck. It reversed the Board's finding, however, as to who was responsible for paying the workers' compensation benefits.

 The scope of appellate review in workers' compensation proceedings is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or any findings of fact are not supported by substantial evidence. *Philadelphia Newspapers, Inc., v. Workmen's Compensation Appeal Board,* 544 Pa. 203, 675 A.2d 1213 (1996). The question of whether an employer-employee relationship exists is one of law, based upon findings of fact. *Martin Trucking Company v. Workmen's Compensation Appeal Board,* 30 Pa. Commw. 367, 373 A.2d 1168 (1977).

 The law governing the "borrowed" employee is well-established. The test for determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it. *Hamler v. Waldron,* 445 Pa. 262, 265, 284 A.2d 725, 726 (1971); *Mature v. Angelo,* 373 Pa. 593, 595, 97 A.2d 59, 60 (1953). The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised. *Mature,* 373 Pa. at 596, 97 A.2d at 60. Other factors which may be relevant include the right to select and discharge the employee and the skill or expertise required for the performance of the work. *Id.* at 597, 97 A.2d at 60. The payment of wages may be considered, but is not a determinative factor. *Venezia v. Philadelphia Electric Company,* 317 Pa. 557, 177 A. 25 (1935). Although the examination of these factors guides the determination, each case must be decided on its own facts. *Daily Express, Inc. v. Workmen's Compensation Appeal Board,* 46 Pa. Commw. 434, 406 A.2d 600 (1979).

The record in the instant case establishes that Claimant applied for a position with JFC. After reviewing Claimant's

qualifications, JFC assigned Claimant to G & B as a tractor-trailer driver.[4] G & B had no control over which driver appeared to perform the work. Claimant reported daily to G & B where the Operations Manager, David Eckert, informed him of work hours, what truck to use, and where to go. Each day, Eckert would give Claimant documents for freight, the bill of lading, and the keys to a tractor-trailer. Personnel at the Naval Depot, the destination of most deliveries, usually completed the bill of lading and noted therein the exact location to deliver the goods. Eckert did not specify a particular route which Claimant was to take. After hauling a load, Claimant would report back to G & B. Claimant was not responsible for unloading the truck. If the deliveries were not accepted, Claimant would return to G & B. About five to ten percent of Claimant's duties included stacking boxes, running small errands and picking up miscellaneous tools and supplies under the direction of Eckert. No representative of JFC was ever present at G & B's facility.

JFC determined and paid Claimant's salary, although his time slips were completed and signed by personnel at G & B.[5] Claimant testified that he would call JFC if he was late or ill and if he had any questions. If Claimant was unable to work, JFC would provide G & B with a replacement. It was G & B's decision whether Claimant's work was satisfactory. If unsatisfied with Claimant's work, G & B could request a replacement for Claimant, although it could not fire him.

JFC contends that finding a temporary employment agency responsible for workers' compensation benefits is inconsistent with the definitions of employer and employee in the Act.[6] It

4. The position with G & B was actually the second assignment given to Claimant by JFC. Facts regarding Claimant's first assignment were not developed in the record.

5. G & B paid JFC a flat rate based upon hours worked.

6. The Act defines the term "employer" as "synonymous with master," 77 P.S. § 21. The term "employee" is defined in pertinent part as "synonymous with servant, and includes—[a]ll natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer. . . ." 77 P.S. § 22.

also submits that a temporary employment agency should never be the employer responsible for paying workers' compensation benefits. It argues that since the entity to which the employee is assigned controls the work environment, refusing to hold it liable for compensation to injured employees would eliminate any incentive for establishing workplace safeguards. We decline to establish such a broad rule and find that the better approach to determining which entity is the responsible employer is to examine the circumstances of each case in light of the factors set forth above.

In analyzing the instant claim, the Commonwealth Court relied on *Accountemps v. Workmen's Compensation Appeal Board (Myers),* 120 Pa. Commw. 489, 548 A.2d 703 (1988). *Accountemps* involved a referral agency which supplied skilled accountants and data processors to various clients. Accountemps evaluated the personnel and matched them to particular jobs. It also set the hours each individual was to work and established and paid the salary.

Upon arriving at the temporary assignment, the claimant was told the specific job she was to perform and was instructed to see a regular employee if she had any questions. She was subsequently injured at the workplace and filed a petition for workers' compensation benefits against both the borrowing employer and Accountemps. The Commonwealth Court found that Accountemps was the responsible employer because the claimant already possessed the requisite skill and did not have to be instructed on how to perform her basic job. Thus, the borrowing employer never acquired control over the performance of the work.

G & B argues that, like the accountant in *Accountemps,* Claimant possessed the requisite skill to perform the work, i.e. drive the truck, and did not require further instruction from G & B. We disagree. Although G & B did not have to train Claimant regarding the operation of the tractor-trailer, the record establishes that it directed him as to the specifics of the deliveries to be made. Claimant reported to G & B daily, returned there at the end of each work day, and

also performed miscellaneous odd jobs under the direction of G & B personnel. Further, JFC personnel were never present at the G & B worksite. Although JFC paid Claimant, G & B completed the time slips and evaluated his performance.

We recognize that JFC selected Claimant for the position at G & B after examining his qualifications, and that it had the sole power to actually terminate Claimant's employment. We further acknowledge Claimant's testimony that he would call JFC if he was ill or had any questions. Notwithstanding the fact that some factors weigh against finding G & B the responsible employer, the right to control the performance of the work is the overriding factor.

Our decision is in accord with established case law involving borrowed employees. In *English v. Lehigh County*, 286 Pa.Super. 312, 428 A.2d 1343 (1981), Thomas English was hired by Kelly Labor, a temporary employment agency, and was assigned to take samples of sewage for Lehigh County Authority (Authority). Kelly Labor withheld federal, state, and local income taxes as well as social security payments from its workers' wages. It also paid unemployment compensation tax and maintained workmen's compensation insurance.

On the first day of the assignment, an Authority employee at a sewage pretreatment plant instructed English to travel to a metering station ten miles away. English died as a result of inhaling noxious fumes in the pit of the station. His administrator commenced actions to recover damages under the wrongful death and survival statutes. The trial court granted summary judgment in favor of Lehigh County on the ground that English had been the Authority's employee and, pursuant to the Workmen's Compensation Act, it was immune from suit.

The Superior Court affirmed, holding that although Kelly Labor retained some control over its workers, the Authority controlled the manner in which the work was carried out. It noted that once English arrived at his assignment at the Authority, Kelly Labor did not purport to instruct English on how he should carry out the Authority's sewage testing program. Further, the court recognized that although

the Authority did not exercise much control over the sampling program, it had the right to exercise such control.[7]

In *Paul Arpin Van Lines v. Workmen's Compensation Appeal Board,* 148 Pa. Commw. 147, 609 A.2d 906 (1992), the claimant was assigned by his employer to assist a truck driver employed by Arpin. Arpin paid the claimant's wages for the day. The claimant suffered an injury while unloading the Arpin truck and subsequently filed for workers' compensation benefits. The Commonwealth Court found Arpin responsible for payment of the benefits. The court found most significant the fact that the Arpin driver was in control at the worksite and had the right to control the manner of performance of the claimant's work, even if it did not do so. The court further held that although the original employer selected the claimant for the position, it had no contact with him until he returned from unloading the truck.

Similar to the situations in *English* and *Arpin,* once Claimant arrived at the temporary assignment (G & B), his original employer (JFC) did not instruct him regarding the performance of his work. In fact, JFC had no substantial contact with Claimant other than processing his paycheck.[8]

The Superior Court's decision in *Wilkinson v. K–Mart,* 412 Pa.Super. 434, 603 A.2d 659 (1992), is also instructive. The employee in *Wilkinson* was hired by Transco Logistics Corporation and was operating a truck for K–Mart Corporation pursuant to a contract between the two companies. The employee was injured while he was unloading the K–Mart truck and filed a complaint in trespass. Summary judgment

7. G & B argues that *English* is not controlling since, unlike Claimant, the employee there required training to perform his assigned tasks. As noted in our discussion of *Accountemps,* we find that the mere fact that the employee is skilled does not, in and of itself, establish that the original employer has retained the right to control the manner of performance of the work assigned.

8. In support of its argument that JFC retained control over Claimant, G & B asserts that Claimant reported to a woman at JFC. Although Claimant testified that there was a woman at JFC to whom he "reported," he stated that she only called to inform him of an available job. This does not establish that the JFC representative had any right to control the performance of Claimant's work.

was entered in favor of K–Mart on the grounds that it was the employee's statutory employer under the borrowed servant doctrine.

The Superior Court affirmed. It relied on the fact that, pursuant to the contract, K–Mart reserved the right to "dispatch, direct the loading and unloading of vehicles, select routes, direct the drivers as to pick-ups, deliveries and other matters related to day-to-day operations of vehicles." K–Mart personnel dispatched the drivers and chose their routes. The employee also delivered only K–Mart cargo and the truck he drove bore the K–Mart logo. Further, the employee was paid by K–Mart check and K–Mart was billed for the cost of workers' compensation and taxes.

Like K–Mart, G & B controlled the day-to-day operations of the vehicles, although no contract existed between JFC and G & B. Also, G & B rather than JFC would have the right to select the routes taken by Claimant, even if it did not exercise that right. The Superior Court in *Wilkinson* rejected the argument that *Accountemps* stands for the proposition that an employee in possession of special skills or training cannot become a borrowed servant. Instead, *Accountemps* merely held on the facts presented that the borrowing employer did not exercise the control necessary to invoke the borrowed servant doctrine. We too interpret the holding in *Accountemps* as limited to the factual scenario set forth therein.[9]

As we have found that G & B had the right to control the manner of performance of Claimant's work, the Board did not commit an error of law in concluding that G & B was responsible for payment of workers' compensation benefits. The Commonwealth Court erred in reversing the order of the

9. G & B further asserts that in *Daily Express v. Workmen's Compensation Appeal Board*, 46 Pa. Commw. 434, 406 A.2d 600 (1979), the court concluded that the claimant, a truck driver, remained the employee of the original employer even though his injuries were sustained while he was on a trip for the borrowing company. *Daily* is distinguishable, however, since the Commonwealth Court concluded that sufficient evidence did not exist to support the referee's finding that the borrowing employer gave the claimant specific instructions regarding his duties.

Board. Accordingly, the order of the Commonwealth Court is vacated and the order of the Board is reinstated.

NIX, C.J., and NEWMAN, J., did not participate in the consideration or decision of this case.