Mohammad S. KHAN,

v.

ACCURATE MOLD, INC.,

v.

T & L Personnel Services, Inc. and Tahn V. Lam Temporary Services.

No. CIV. A. 99–764.

United States District Court, E.D. Pennsylvania.

Jan. 14, 2000.

James R. Radmore, Law Offices of Boardman, Radmore & Glassman, P.C., Philadelphia, PA, for Mohammad S. Khan.

George A. Prutting, Jr., George A. Prutting, Jr., P.A., Audubon, NJ, for Accurate Mold, Inc.

Jonathan M. Field, Edelstein, Mintzer & Sarowitz, Philadelphia, PA, for T&L Personnel Services, Inc., Tahn G. Lam.

## MEMORANDUM

LUDWIG, District Judge.

Defendant Accurate Mold, Inc. and plaintiff Mohammad S. Khan cross-move for summary judgment; and third-party defendants T & L Personnel Services, Inc. and Than V. Lam Temporary Services move for summary judgment against Accurate Mold.[1] Fed.R.Civ.P. 56.[2] Jurisdiction is diversity. 28 U.S.C. § 1332.

On June 2, 1997, Khan, an employee of T & L, a temporary employment agency, lost his right hand while operating a punch press at Accurate Mold. For a few weeks before the accident, Khan had been working at Accurate Mold under a written agreement between Accurate Mold and T & L. The agreement contained an indemnification provision covering claims and losses experienced by Accurate Mold as the result of its use of T & L's temporary employees. When Khan sued Accurate Mold for his personal injuries, the latter joined T & L as a third-party defendant indemnitor.

As summary judgment movant, defendant Accurate Mold contends that it is not subject to common law liability because Khan was a borrowed servant and, therefore, its employee. Khan maintains that he is entitled to partial summary judgment on this issue. T & L contends that its indemnity obligation to Accurate Mold does not include an employee's personal injuries. In response, Accurate Mold moves for leave to amend its third-party complaint to include a negligence claim against T & L. Fed.R.Civ.P. 15(a).

## DISCUSSION

### A. Liability of Accurate Mold

If Khan was Accurate Mold's employee at the time of the accident, Accurate Mold is immune from liability for his injuries by virtue of the Pennsylvania Workers' Compensation Act.[3] 77 P.S. § 1 *et seq.* If not its employee, Accurate Mold's status is the same as any alleged tortfeasor.

Under the Pennsylvania Workers' Compensation Act, the "liability of an employer under this act shall be exclusive and in place of all other liability" to its employees. *Id.* at § 481. In law, the borrowed servant doctrine characterizes employees lent by one employer to another as the employee of the borrower. *JFC Temps, Inc. v. Workmen's Compensation Appeal Bd.*, 545 Pa. 149, 680 A.2d 862 (1996). In that decision, the application of the doctrine was articulated by the Pennsylvania Supreme Court:

1. T & L Personnel Services, Inc. appears to be the successor to Tahn V. Lam Temporary Services.

2. "[S]ummary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trail and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham,* 120 F.3d 392, 395 (3d Cir.1997).

3. Khan received workers' compensation benefits through T & L's workers' compensation insurance. However, those facts do not affect Accurate Mold's entitlement to statutory immunity. *See Shaw v. Thrift Drug, Inc.,* Civ. No. 98–5170, 1999 WL 994020 at *4 (E.D.Pa. Nov.2, 1999), *citing Supp v. Erie Ins. Exch.,* 330 Pa.Super. 542, 550, 479 A.2d 1037, 1041 (1984).

[t]he test for determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passed under the latter's right of control with regard not only to the work to be done but also as to the manner of performing it. The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised. Other factors include the right to select and discharge the employee and the skill or expertise required for the performance of the work. The payment of wages may be considered, but it is not a determinative factor. Although the examination of these factors guides the determination, each case much be decided on its own facts.

*Id.* at 545 Pa. at 153, 680 A.2d at 864 (citations omitted).

Accurate Mold is a manufacturer of plastic moldings. In May 1996, it began obtaining temporary workers from T & L [4] and paid T & L $7.50 per hour for their services. Lam dep. at 35–36. The workers, in turn, received $5 per hour from T & L.[5] *Id.* at 39. The work consisted of preparing plastic molds and running injection molding machines in two 12–hour shifts a day. Lam dep. at 63, 71–74. The workers were of Pakistani origin, and almost none spoke English, including plaintiff. 7/21/99

deposition of Nicholas Andrew Miller at 28.

As a daily practice, Tahn V. Lam, the sole owner of T & L, transported these temporary employees to Accurate Mold's plant in Sommerdale, New Jersey. 7/21/99 deposition of Mohammad S. Khan (7/21 Khan dep.) at 17–19. When their shift was over, he would return them to Philadelphia. *Id.* On occasion, Lam discussed certain employment matters with Accurate Mold's supervisors at the facility, but generally spent little time there and did not give the temporary workers any training. Lam dep. at 51–54.

For the most part, the temporary employees worked on their own and had limited contact with Accurate Mold employees.[6] 7/21 Khan dep. at 23; 8/31/99 deposition of Mohammad S. Khan (8/31 Khan dep.) at 32. Accurate Mold's supervisors communicated with the few Pakistanis who understood English [7] about the work assignments.[8] These individuals would then pass on instructions to their co-workers. Lam dep. at 83. However, these manual tasks were simple and repetitive, and the Pakistani workers had almost no day-to-day contact with Accurate Mold employees, relying on past routine to do their jobs. 7/21 Khan dep. at 23–24.[9]

---

4. At this time the business was known as Tahn V. Lam Temporary Services. T & L was incorporated in May 1997 and was the entity supplying Accurate Mold temporary workers on the day of the accident. Deposition of Tahn V. Lam (Lam dep.) at 26.

5. Under the T & L/Accurate Mold agreement, the workers were considered employees of T & L, and T & L "assume[d] all legal responsibility as the employer of such persons," which included workers' compensation insurance, employers' liability insurance, and comprehensive general liability insurance coverage. Exh. A, attached to "Plaintiff's Response to Defendant's Motion for Summary Judgment."

6. Khan stated that he had no contact with any employee of Accurate Mold. 8/31 Khan dep. at 21.

7. A worker named Andres was the most fluent in English. Lam dep. 83.

8. These tasks included drilling holes, cutting plastic, sweeping, and loading and unloading materials on and from various machines.

9. When asked how he learned to do his job, Khan said, "[w]e used to do the work there by switching our works and doing it by rotation like some of us are making holes, some of us are doing other things with the machine, so we used to exchange and do it by rotation ... and we used to watch each other how to do, so everything was full cooperation between my friends and I and it was easy." 8/31/99 Khan dep. at 10.

Plaintiff argues that since the temporary employees were treated as an autonomous, separate group within the plant, Accurate Mold should not be considered his employer. It is correct that Accurate Mold did not maintain any records or do any paperwork relative to these workers, did not keep track of their hours, and had no responsibility to pay wages or furnish insurance. Moreover, Accurate Mold gave them hardly any direct supervision.

■ However, the test is not whether Accurate Mold controlled the performance of the temporary employees' work; it is whether it had the right to exercise such control. "The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised." *JFC Temps*, 545 Pa. at 153, 680 A.2d at 864, *citing Mature v. Angelo*, 373 Pa. 593, 595, 97 A.2d 59, 60 (1953).

■ Despite its lack of hands-on supervision, Accurate Mold at all times determined what work was to be done and had the right to exercise control over how it was accomplished. Given that these were uncomplicated physical tasks and matters of rote, the workers required only incidental supervision or instruction. The lack of training and monitoring does not lead to the inference that Accurate Mold did not have the right to control job performance. The non-use of power should not logically be equated with the absence of authority to exercise the power. Here, it is unquestioned that Accurate Mold could have trained, supervised, and controlled the physical manner of the work if it had found it to be necessary and desirable to do so.[10] There is no reason to believe Accurate Mold could not have told plaintiff, albeit through an interpreter, exactly how it wanted him to perform each part of his job.

Accordingly, plaintiff, as a borrowed servant, is deemed to have been Accurate Mold's employee, for which reason, under the Pennsylvania Workers' Compensation Act, Accurate Mold is immune from liability for his injuries.

**B. T & L's Liability**

Having concluded that Accurate Mold is not liable, its cross-claim against third-party defendant T & L is moot, as are the latter's motions.

---

10. The power to assign particular tasks to "borrowed" workers does not by itself amount to a right to control. *See Mature*, 373 Pa. at 597, 97 A.2d at 62 63. However, as to unskilled jobs, unless retained by the lender or reposed in a third-party, the right to control ordinarily will lie with the borrower, even though the exercise of such control is not evident. In this instance, the lender did not retain a right to control the manner of performance and there was no third party.