IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Penn National Security     :
Insurance Company,      :
          :
      Petitioner   :
          :
    v.        : No. 839 C.D. 2020
          : Submitted: June 25, 2021
Darrel Henline (Workers'    :
Compensation Appeal Board),   :
          :
      Respondent : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge[1]
      HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK           FILED: April 11, 2022


    Penn National Security Insurance Company (Penn National), workers' compensation carrier for Lingenfelter Yard Work (Lingenfelter), petitions this Court for review of the August 11, 2020 order of the Workers' Compensation Appeal Board (Board), which affirmed the December 18, 2018 order and decision of the Workers' Compensation Judge (WCJ). The WCJ granted Darrel Henline's (Claimant) claim petition against Lingenfelter for work injuries Claimant sustained on August 11, 2016, when he was working as a laborer for Lingenfelter. The WCJ dismissed Claimant's penalty petition, and dismissed as moot Lingenfelter's and another company's, Tree Monkey Company's (Tree Monkey), joinder petitions

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

against each other. Penn National argues that the WCJ erred in granting Claimant's claim petition against Lingenfelter because it contends that, at the time of injury, Claimant was not working for Lingenfelter and was not insured by Penn National. Penn National also argues that the WCJ erred in finding that Penn National's insurance policy covered the work being performed by Claimant on the date of injury. After careful review, we affirm.

The relevant facts as found by the WCJ are as follows. Claimant filed a claim petition against Lingenfelter and Penn National alleging that he sustained an electric shock injury on August 11, 2016, while working as a laborer for Lingenfelter. Certified Record (C.R.) at 68. Claimant alleged that he suffered electrical burns affecting his right hand and both feet when he was trimming trees while standing on the ground, and the arc of the pole saw he was using hit a tree branch, and then hit Claimant. Reproduced Record (R.R.) at 2a. Lingenfelter denied the material averments in the claim petition. C.R. at 68. Claimant filed a second claim petition against Tree Monkey and its workers' compensation carrier, State Workers' Insurance Fund (SWIF), for the same injury, which Tree Monkey denied. *Id.* Lingenfelter and Tree Monkey then filed joinder petitions, naming each other as additional defendants. The WCJ consolidated the petitions for purposes of litigation. *Id.*

As the parties did not dispute Claimant's injury, the WCJ bifurcated the proceedings to first determine the issue of whether Lingenfelter or Tree Monkey was Claimant's employer on the date of injury. The WCJ held several hearings at which Claimant, Lingenfelter, and Tree Monkey had the opportunity to present witnesses and documentary evidence regarding the incident and Claimant's employment. Claimant presented his own testimony. Tree Monkey presented testimony from the

2

owner of both Lingenfelter and Tree Monkey, Kathy Lingenfelter (Owner). Lingenfelter presented testimony from Penn National's underwriting manager, Christopher Neff (Underwriting Manager). Lingenfelter also presented deposition testimony of insurance broker Heather McClafferty (Broker), who submitted applications from Lingenfelter to Penn National for all its commercial insurance coverage including workers' compensation. Lingenfelter also presented an affidavit and deposition testimony of a Penn National underwriter, Patricia O'Reilly (Underwriter).

Regarding the employer-employee relationship, Claimant testified that he worked for Lingenfelter as a "ground man, laborer," was paid by Lingenfelter, was given Tree Monkey shirts to wear on the job, sometimes used equipment supplied by Tree Monkey, where his job duties consisted of landscaping, but did not involve climbing trees. R.R. at 152a-54a, 161a-63a. Claimant further testified that Tree Monkey employees were involved in climbing trees, but he was not. *Id.* at 164a, 173a. Claimant further testified that although he often worked with Tree Monkey employees, he never worked directly for Tree Monkey. *Id.* at 174a. Claimant further testified that his day-to-day work was supervised by a Lingenfelter employee, Jesse Van Horne, and Tree Monkey employees were supervised by a Tree Monkey employee named Dan. *Id.* at 177a-79a.

Owner also testified regarding the employer-employee relationship, explaining that she and her late husband owned both Lingenfelter and Tree Monkey, which are separate entities with separate bank accounts, with Lingenfelter doing landscaping and Tree Monkey doing tree removal. *Id.* at 237a-39a, 247a. Consistent with Claimant, Owner testified that Claimant was employed and paid by Lingenfelter, and Claimant was supervised by Lingenfelter employee Mr. Van

3

Horne. *Id.* at 239a-40a, 244a, 254a. Owner testified that she gave Claimant shirts with Tree Monkey on them, which were given as gifts, were not part of any required uniform, and she did not provide any shirts with Lingenfelter on them due to cost constraints. *Id.* at 249a, 272a. When asked to explain employees' duties at each company, Owner explained that Lingenfelter employees rake leaves, and trim small bushes and trees from the ground, compared to Tree Monkey employees who take down trees by climbing them, using climbing gear and other equipment, and that Lingenfelter employees do not use climbers or bucket trucks. *Id.* at 240a-41a. Owner further testified that on the day Claimant was injured, Claimant was working for Lingenfelter, as subcontractor on the job in which Tree Monkey was the general contractor. *Id.* at 253a-54a.

As to the issue of Penn National's coverage, Owner testified that Broker prepared Lingenfelter's workers' compensation insurance application, and that she relied on Broker to assign the proper code to Lingenfelter's work. R.R. at 255a-256a. Broker testified that although she was not sure if she, or someone else in her office, prepared Lingenfelter's workers' compensation application, she agreed that the information in the application was accurate to the best of her belief. *Id.* at 344a, 347a-48a, 378a. Broker testified that the business codes contained in Lingenfelter's workers' compensation insurance application "come[] from the state" and that she "cannot change these codes." *Id.* at 351a-52a. Broker testified that she believed Penn National should not have denied Claimant's claim on coverage grounds, so long as Lingenfelter employees performed landscaping duties on the ground, their work should be covered by Penn National, and she sent several emails to Penn National and to the Workers' Compensation Rating Bureau, which assigns codes to businesses, to try and resolve the coverage issue. *Id.* at 353a, 364a, 369a-70a, 379a.

4

Underwriting Manager testified that Penn National provided workers' compensation to Lingenfelter but not to Tree Monkey, because of the "high hazard nature" of Tree Monkey's business, "working at heights and climbing through trees." R.R. at 287a. Underwriting Manager confirmed that Penn National's information regarding Lingenfelter employees' job duties came from Broker, acting as Penn National's agent, through Broker's agency, the Jack Bonus agency. *Id.* at 289a, 312a-13a. Underwriting Manager agreed that Lingenfelter employees were permitted to trim hedges and bushes under the landscaping code 012 on its application, but he declined to state whether Penn National would deny coverage for a Lingenfelter employee injured while trimming a tree. *Id.* at 302a-03a. Underwriter testified that she approved Lingenfelter's workers' compensation insurance application based on the description of its work as "lawn maintenance, mowing, cleaning of yard debris," and "no snow plowing." *Id.* at 432a, 440a. Underwriter also testified that Lingenfelter's application for workers' compensation insurance does not say whether it prunes trees or does not prune trees, but that she approved it anyway. *Id.* at 439a-40a.

Pursuant to Section 410 of the Workers' Compensation Act (Act),[2] 77 P.S. §751, the WCJ issued an interlocutory order which ordered both Lingenfelter and Tree Monkey, and their insurers, to equally pay Claimant's indemnity and medical benefits. C.R. at 68. The WCJ issued another interlocutory order in which he determined that the "credible testimony and documentary evidence of record in

[2] Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710. Section 410 of the Act provides in relevant part that "[w]henever any claim for compensation is presented and the only issue involved is the liability as between" two or more employers or their carriers, the WCJ shall order payments to be made immediately by employers or their carriers. After a final decision, payments made by the employer or carrier not liable shall be assessed against the liable employer or carrier.

5

this matter demonstrates that Claimant was an employee of Lingenfelter [], and not an employee of Tree Monkey [], at the time of his alleged August 11, 2016 work injury." *Id.* at 84. The WCJ also concluded that, on the date of the injury, "Lingenfelter [] and its employees were covered by a policy of workers' compensation insurance issued by Penn National []." *Id.* The WCJ also concluded that the insurance application submitted by Lingenfelter to Penn National "contains no material misrepresentation of fact, such that rescission of the policy is in order."[3] *Id.* After providing Penn National the opportunity to file a late brief, the WCJ reissued the same interlocutory order, concluding that Claimant was employed by Lingenfelter and covered by Penn National.

On December 18, 2018, the WCJ issued a final order, which incorporated his prior interlocutory orders, and in which he made the same findings and conclusions as in his prior orders. C.R. at 65-89. Penn National appealed the final order to the Board, which affirmed. Penn National then requested a rehearing before the Board, and, at the same time, Penn National filed a protective appeal to this Court.[4] The Board then issued an order remanding the case to the WCJ to review and supplement the record with any exhibits missing from the record. C.R. at 123-26. The WCJ held hearings and supplemented the record, with the parties' agreement, and he reaffirmed his prior final order. *Id.* at 141-44.

With the record completed after remand, the Board took no additional evidence, considered the merits of Penn National's appeal, and issued an order and

---

[3] Penn National did not appeal the rescission issue to this Court, therefore, we will not address it further. *See* Penn National's brief, p. 19, and its petition for review, filed with this Court.

[4] This Court dismissed Penn National's protective appeal at 91 C.D. 2020, as inoperative, in an Order dated June 30, 2020.

decision dated August 11, 2020, which affirmed the WCJ's December 18, 2020 final order and decision. C.R. at 157-79. The Board reviewed the relevant factors in determining the existence of an employer-employee relationship, reviewed the testimony presented, and found substantial evidence supported the WCJ's findings as to Claimant's employer and Penn National's coverage. *Id.* Penn National then petitioned this Court for review.[5] On January 25, 2021, Claimant filed a notice of nonparticipation with this Court, indicating that his claim with Penn National had been settled by a full compromise and release.

As we review the questions presented by Penn National, we are mindful that, in workers' compensation cases, "the WCJ is the ultimate fact-finder who must determine credibility and evidentiary weight. In this role, the WCJ freely evaluates the evidence offered and can accept or reject any witness'[s] testimony, in whole or in part, including that of medical witnesses." *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000). As this Court further stated, "[w]hile this Court can and should consider the competency and sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness credibility is not subject to our review on appeal." *Id.* Furthermore, in a substantial evidence analysis where, as here, both parties presented evidence, "it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is

---

[5] Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1318 n.4 (Pa. Cmwlth. 1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992).

any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Our standard of review for questions regarding the employer-employee relationship is as follows:

> The existence of an employer-employee relationship is a question of law based upon findings of fact. The existence of an employer-employee relationship must be determined on a case-by-case basis with reference to four basic elements: (1) the right to select the employee; (2) the right and power to remove the employee; (3) the power to direct the manner of performance; and (4) the potential power to direct the manner of performance.

*Sunset Golf Course v. Workmen's Compensation Appeal Board (Department of Public Welfare)*, 595 A.2d 213, 216 (Pa. Cmwlth. 1991). As our Supreme Court explained, the payment of wages may be considered, but is not determinative in establishing an employer-employee relationship. *JFC Temps, Inc. v. Workmen's Compensation Appeal Board (Lindsay and G&B Packing)*, 680 A.2d 862, 864 (Pa. 1996). After analyzing the relevant factors, our Supreme Court explained that "[n]otwithstanding the fact that some factors weigh against finding [employer] the responsible employer, the right to control the performance of the work is the overriding factor." *Id.* at 865.

With these standards in mind, we turn to the WCJ's critical findings of fact from his December 18, 2018 decision, as follows:

> 11) Claimant was an employee of Lingenfelter [] at the time of his alleged work injury, and was not an employee of Tree Monkey. In so finding, I find the testimony of Claimant and [Owner] to be credible. Their uncontradicted testimony was consistent that Claimant was an employee of Lingenfelter, and not an employee of

8

Tree Monkey, at all relevant times. Their testimony was corroborated by the wage records submitted in this matter, none of which show that Claimant was employed by, or received wages from, Tree Monkey.

12) At the time of the alleged injury, Lingenfelter had a policy of workers' compensation insurance in effect with Penn National [] which covered its employees, including Claimant. In so finding, I rely upon the credible testimony of [Underwriter], who caused the insurance policy to be issued. I also rely in part upon the credible testimony of [Broker], who was acting as Penn National []'s Agent in completing the insurance application for Lingenfelter. [Broker] confirmed that the documents submitted to Penn National were accurate to the best of her belief. Finally, I rely in part upon the credible testimony of [Underwriting Manager] for Penn National []. [Underwriting Manager's] testimony establishes that although the Lingenfelter application made have been "coded" improperly, all of the information concerning the types of job duties performed by employees of Lingenfelter came from its Agent, the Jack Bonus Agency [Broker's agency]. [Underwriting Manager declined to state whether Penn National would deny coverage for injuries which occur beyond the strict definition of an insured's business as described in an application.

13) The insurance application submitted to Penn National by Lingenfelter contains no material misrepresentations of fact, such that rescission of the policy is in order. In so finding, I rely upon the testimony of [Broker], Penn National's Agent, who agreed that all the information contained in the application was accurate to the best of her belief. I also rely upon the testimony of [Owner], who credibly testified that she did not prepare the application, and was relying upon [Broker's] expertise with regard to the codes and classifications set forth on the document. Penn National nevertheless argues that the application was incomplete, and therefore is misleading, regarding tree trimming and pruning. The error, if any, is entirely attributable to Penn National. [Underwriter] agreed that the application does not say whether Lingenfelter prunes trees or does not prune trees. [Underwriter] approved the

application anyway, and caused a policy of insurance covering Lingenfelter's employees, including Claimant, to be issued.

C.R. at 83-84.

Penn National presents two questions for our review, whether the WCJ and the Board erred in determining that Claimant was Lingenfelter's employee at the time of injury, and whether the WCJ and the Board erred in determining that Penn National provided coverage for the work Claimant performed at the time of injury. Penn National first argues that the WCJ's finding of fact 11 did not provide findings of fact specific enough to support a conclusion that Claimant was employed by Lingenfelter. Penn National argues that because the work performed by Claimant on August 11, 2016 was done pursuant to a proposal between the customer and Tree Monkey, Claimant wore Tree Monkey shirts on the job, and Claimant received training from Owner's late husband, who was one of Tree Monkey's owners, the WCJ erred in finding Claimant was employed by Lingenfelter.

Penn National also argues that the work Claimant performed on August 11, 2016, namely, working on the ground and using a pole saw to cut tree branches, was not "landscaping" as defined by Penn National's workers' compensation policy. Penn National focuses on Lingenfelter's workers' compensation insurance application to Penn National, where Lingenfelter's work was categorized under the landscaping code 012, when it should have been categorized under the tree pruning code 005. R.R. at 97a-103a, 407a-08a. Penn National argues that because Claimant was pruning trees when he was injured, and that tree pruning is excluded from activities under landscaping code 012, that Penn National should not be responsible for Claimant's injury. Penn National cites to no case law or other authority in support of its argument that Claimant should not be covered for injury because Lingenfelter's work was incorrectly coded on its insurance application.

10

Tree Monkey responds that the WCJ did not err when he found that Claimant was employed by Lingenfelter, based on the WCJ's determination that both Owner and Claimant testified credibly about the employer-employee relationship. Tree Monkey notes that both Owner and Claimant testified that Claimant was supervised by, and his work was directed on a day-to-day basis by, Lingenfelter's crew leader, Jesse Van Horne. R.R. at 177a, 254a. Tree Monkey responds that Claimant's and Owner's testimony regarding employment was corroborated by Claimant's payroll records, which show Claimant was paid by Lingenfelter, and not Tree Monkey, while he was employed. Tree Monkey responds that Owner's testimony, as credited by the WCJ, shows that Lingenfelter and Tree Monkey are two distinct entities, Owner and her late husband were the owners of both companies, the two companies sometimes worked separately and sometimes worked together on jobs, and Lingenfelter employees always "stayed on the ground." *Id.* at 241a.

Tree Monkey further responds that this Court should ignore as irrelevant Penn National's argument that because its agents may have miscoded Lingenfelter's application for workers' compensation coverage, the alleged error should operate to deny coverage for Claimant's injury. Tree Monkey argues that Penn National cannot change Claimant's employer to Tree Monkey because Claimant's job duties allegedly correlate more to the tree pruning code 005 than to the landscaping code 012. Tree Monkey further responds that, contrary to Penn National's suggestion, the record contains no evidence to support that Claimant was a borrowed employee.

As to Penn National's first issue, we discern no error in the WCJ's finding that Claimant was employed by Lingenfelter, and not Tree Monkey, on the

11

date of injury. The WCJ found Claimant credible when he testified that he was hired by Lingenfelter to perform landscaping work, was paid by Lingenfelter, and a Lingenfelter employee, Mr. Van Horne, was his day-to-day supervisor who directed Claimant's job performance. The WCJ also found Owner credible when she testified that Lingenfelter and Tree Monkey are two separate business entities, Lingenfelter hired Claimant, Lingenfelter employee Mr. Van Horne supervised Claimant, and Lingenfelter paid Claimant. This testimony, credited by the WCJ, provides substantial evidence for the WCJ's finding that Claimant was employed by Lingenfelter. We may not substitute our findings for the WCJ's findings, and the WCJ's credibility determinations are not subject to our review. *Davis*, 753 A.2d at 909. Further, here, where both parties presented evidence regarding the employer-employee relationship, "it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster*, 721 A.2d at 1155.

Further, we discern no legal error in the WCJ's conclusion of law that the "credible testimony and documentary evidence of record" demonstrates that Claimant was employed by Lingenfelter, and not Tree Monkey, on the date of injury. C.R. at 84. The WCJ concluded that Claimant was employed by Lingenfelter, supported by the uncontradicted testimony of Owner and Claimant. The law governing employer-employee relationships requires that we determine, based on the factual findings, whether Lingenfelter had the right to select Claimant, to remove Claimant, to direct "the manner" of Claimant's performance, and whether Lingenfelter had the potential power to direct Claimant's performance. *Sunset Golf Course*, 595 A.2d at 216. The WCJ did not err in considering Claimant's payroll

12

records, which corroborated Claimant's and Owner's credited testimony. *JFC Temps, Inc.*, 680 A.2d at 864. The WCJ did not err in concluding that Claimant was employed by Lingenfelter, when Owner and Claimant testified that Lingenfelter, and not Tree Monkey, had the right to control, and did control, Claimant's work performance, which, is "the overriding factor." *Id.* at 865.

As to Penn National's second issue, we discern no error in the WCJ's finding and conclusion that Penn National provided coverage for the work Claimant performed at the time of injury. There is no dispute that Lingenfelter applied for, and Penn National issued, a workers' compensation policy to Lingenfelter, which was in effect on August 11, 2016, the date of injury. R.R. at 97a-134a. The WCJ found Broker's testimony credible, when she confirmed that the application submitted to Penn National was "accurate to the best of her belief." C.R. at 83. The WCJ also credited Underwriter's testimony, when she testified that she caused the policy to be issued. The WCJ also credited Underwriter's Manager's testimony, when he testified that, although Lingenfelter's application may have been coded improperly, all information concerning Lingenfelter's work came from its Broker, who served as Penn National's agent, and not from Owner. Penn National provides no legal support for its position that an incorrect code attributed to Lingenfelter's work should provide grounds for denial of coverage, when the application contained no material misrepresentation of fact. We discern no error in the WCJ's finding that the coding error, "if any, is entirely attributable to Penn National." C.R. at 84. The policy issued by Penn National provided for premium adjustments if Lingenfelter's work was "not properly described" by the code currently assigned to it. R.R. at 111a. However, Penn National's alleged coding error does not provide a basis for it to deny

13

coverage to Lingenfelter for Claimant's injury, when Lingenfelter's application contained no material misrepresentations.


_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Penn National Security         :
Insurance Company,           :
                    :
          Petitioner   :
                    :
      v.             : No. 839 C.D. 2020
                    :
Darrel Henline (Workers'       :
Compensation Appeal Board),     :
                    :
          Respondent :

O R D E R

AND NOW, this 11th day of April, 2022, the order of the Workers'
Compensation Appeal Board dated August 11, 2020, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge