J-S09014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JASMIN ORTIZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LINCOLN ELECTRIC AUTOMATION, | : | No. 1384 EDA 2023 |
| INC., AS SUCCESSOR TO | : | |
| COLDWATER MACHINE CO. AND | : | |
| R/K BELTING SPECIALITIES D/B/A | : | |
| F.N. SHEPPARD & CO. AND | : | |
| MCMASTER-CARR | : | |
| | : | |
| ---------------------------------------- | : | |
| | : | |
| JASMIN ORTIZ | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PAC WORLDWIDE CORP. WORLD | : | |
| HEADQUARTERS AND | : | |
| PAC WORLDWIDE CORP. AND | : | |
| JOHN DOES 1-5 FICTITIOUS | : | |
| DEFENDANT(S) | : | |
| | : | |

Appeal from the Order Entered April 20, 2023
In the Court of Common Pleas of Northampton County
Civil Division at No(s):  C-48-CV-2019-11292,
C-48-CV-2021-03485

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED JUNE 26, 2024**

Jasmin Ortiz ("Ortiz") appeals from the order entered in the Northampton County Court of Common Pleas on April 20, 2023, which made final the court's December 20, 2022, order granting the motion for summary judgment filed by PAC Worldwide Corporation and PAC Worldwide Corporation World Headquarters (collectively "PAC Worldwide"). We affirm.

On November 25, 2019, Ortiz filed a complaint against PAC Worldwide, and John Does 1-5 (fictitious defendant(s)). Ortiz asserted claims of products liability - strict liability and breach of warranty against each defendant. Ortiz's claims arose out of a workplace accident that occurred on May 21, 2019, in a manufacturing/production facility in Bethlehem, Pennsylvania operated by PAC Worldwide (the "Facility"). Ortiz sought damages for injuries she sustained while working on an industrial machine at the Facility.

On July 6, 2021, Ortiz filed a complaint against Lincoln Electric Automation f/k/a Coldwater Machine Company, The Lincoln Electric Company d/b/a Lincoln Electric Automation, F.N. Sheppard & Co., and McMaster-Carr. Ortiz asserted claims of products liability – strict liability, products liability – negligence, and breach of warranty against each defendant. These claims were based on Ortiz's allegations that these separate defendants made component parts of the industrial machine on which Ortiz was working when she was injured.

On October 1, 2021, after answers, new matter, and cross-claims had been exchanged between the parties, the trial court consolidated the two cases upon consideration of Ortiz's unopposed motion to consolidate.

On November 30, 2021, a stipulation was entered by the parties that the name of the defendant identified in the July 6, 2021 pleadings as "F.N. Sheppard & Co." was incorrect and the proper name of the defendant is "R/K Belting Specialties d/b/a F.N. Sheppard & Company." Further, the name of the defendants identified in the original pleadings as "Lincoln Electric Automation f/k/a Coldwater Machine Company" and "The Lincoln Electric Company d/b/a Lincoln Electric Automation" were incorrect and the proper name of the defendant is "Lincoln Electric Automation, Inc. as successor to Coldwater Machine Company" (hereinafter "Lincoln"). The caption was thereafter amended to reflect the same.

On May 4, 2022, PAC Worldwide filed a motion for summary judgment, asserting that Ortiz was a borrowed employee of PAC Worldwide at the time of the incident, and therefore PAC Worldwide is immune from suit pursuant to the exclusive remedy of the Pennsylvania Workers' Compensation Act (hereinafter the "WCA"), 77 P.S. § 481. Ortiz filed an answer in opposition to the motion for summary judgment.

On December 20, 2022, the trial court filed an opinion and order granting summary judgment in favor of PAC Worldwide.

On April 20, 2023, the trial court entered an order dismissing Lincoln, F.N. Sheppard & Co., and McMaster-Carr from the consolidated case, with prejudice, upon stipulation of the parties. This stipulation was entered in order to enable Ortiz to appeal the grant of summary judgment in favor of PAC Worldwide. This timely appeal followed.

Preliminarily, we note that while Ortiz appeals from the April 20, 2023 order, all of Ortiz's issues relate instead to the trial court's December 20, 2022 grant of summary judgment as to PAC Worldwide.

The December 20, 2022 order was not final when entered. Under our rules of appellate procedure, an order granting summary judgment as to some, but not all, defendants named in a civil complaint is not a final order unless the trial court expressly determines the order should be treated as such. *See* Pa.R.A.P. 341, Note. Instead, the partial grant of summary judgment only becomes final after entry of an order disposing of all claims or of all parties. *See id*.

Because the December 20, 2022 order was not final when entered, the entry of summary judgment in favor of PAC Worldwide did not become appealable until the April 20, 2023 order was entered. Accordingly, Ortiz's timely notice of appeal from the April 20, 2023 order timely preserved her challenge to the entry of summary judgment in PAC Worldwide's favor.

We also note that while Ortiz's brief contains an argument section, it is not divided "into as many parts as there are questions to be argued." Pa.R.A.P.

2119(a). Ortiz purports to raise 4 issues on appeal, but only divides the argument portion of her brief into 2 sections. Notably, in her statement of questions involved, Ortiz presents four issues of trial court error all related to the trial court's grant of summary judgment in PAC Worldwide's favor. However, in the actual argument section of her brief, Ortiz only presents two argument sections, the first arguing why the borrowed employee doctrine is not applicable to PAC Worldwide, *see* Appellant's Brief, at 22, and the second explaining why a genuine issue of material fact exists as to whether the borrowed employee doctrine applies to this action. ***See id.*** at 39. After a review of the record, it is clear Ortiz has presented to us, verbatim, the argument section from her brief in opposition to PAC Worldwide's motion for summary judgment in the trial court. ***Compare*** Brief in Opposition to Motion for Summary Judgment, 8/17/22, at 9-18, ***with*** Appellant's Brief, at 22-39. Accordingly, the verbiage used is not specific to any error committed by the trial court. Rather, the argument states in general why summary judgment should not be issued, not why the trial court erred in granting summary judgment.

Nevertheless, as it appears the gist of Ortiz's four issues is encompassed within her two argument sections, and considering our standard of review, we do not find Ortiz's failure to present a new argument hampers our review.

Our standard of review of a trial court's order granting summary judgment is as follows:

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Gerber v. Piergrossi*, 142 A.3d 854, 858 (Pa. Super. 2016) (citation and brackets omitted).

The WCA provides in relevant part:

The liability of an employer under [the WCA] shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death

77 P.S. § 481(a) (footnotes omitted).

Except in limited circumstances not present here, an employer is therefore immune from tort liability for injuries suffered by its employees that are compensable under the WCA.

Under the borrowed employee doctrine, where a worker employed by one company is furnished by that company to perform work for another company, the latter company is his

employer under the WCA if it has the right to control his work and the manner in which the work is done.

***Burrell v. Streamlight, Inc.***, 222 A.3d 1137, 1139 (Pa. Super. 2019) (citations omitted).

The test for whether a company is a worker's employer under the borrowed employee doctrine is well established:

> The test for determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it. The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised. Other factors which may be relevant include the right to select and discharge the employee and the skill or expertise required for the performance of the work. The payment of wages may be considered, but is not a determinative factor. Although the examination of these factors guides the determination, each case must be decided on its own facts.

***JFC Temps, Inc.***, 680 A.2d 862, 864 (Pa. 1996) (citations omitted).

Kyle Stano, the human resources manager for PAC, testified during an oral deposition. Stano testified that Ortiz was working as a packer at the end of a machine that produces Amazon envelopes at the time of the incident. ***See*** Oral Deposition of Kyle Stano, 3/4/21, at 18. Stano testified that a majority of the packers who work the end of the machine are PAC employees and a small percentage are from a temporary service. ***See id***. PAC Worldwide typically uses only one or two temporary services. ***See id***. at 19. At the time of the incident, Adecco was one of the temporary services PAC Worldwide was using for any temporary workers they needed. ***See id***. PAC Worldwide would

contact a temporary service, and the temporary services would supply any workers PAC Worldwide needed. *See id*. at 21. The contract was typically for 500 hours. *See id*. at 22. After the 500 hours was completed, the temporary worker would be considered for permanent employment with PAC Worldwide, but this was not always the case. *See id*. PAC Worldwide did not pick the temporary workers that were sent by the service. *See id*. at 23.

When the temporary worker showed up for work at PAC Worldwide, the temporary worker would work with an experienced packer until they were comfortable working alone. *See id*. Stano testified that ideally a PAC employee would be training a temporary employee. *See id*. at 24. He did not know if there were times when a more experienced temporary worker would be helping a new temporary worker. *See id*. At the time of the incident, PAC did not offer formal classroom training or seminar type training. *See id*. at 25.

The temporary service was responsible for firing temporary workers. *See id*. The temporary workers were supervised by a PAC employee, with each shift having its own supervisor. *See id*. at 26. The temporary workers were paid by the temporary service. *See id*. Worker's compensation, in terms of medical treatment, went through the temporary service. *See id*. The temporary workers did not receive any performance evaluations from PAC Worldwide during their time there. *See id*. at 27. If PAC Worldwide had a problem with a temporary employee, the temporary service would normally

take care of it. *See id*. at 27-28. However, Stano noted the response could be mixed depending on the severity of the issue. *See id*.

Ortiz also testified during an oral deposition. When asked who her employer was at the time of the incident, Ortiz replied "PAC Worldwide, Adecco." *See* Oral Deposition of Jasmin Ortiz, 3/4/21, at 13. Ortiz stated she is no longer employed by Adecco. *See id*. Ortiz testified that she had been working at PAC Worldwide as a packer for approximately three months at the time of the incident. *See id*. at 21. She was still working with the temporary service at that time, and had not yet been hired permanently by PAC Worldwide. *See id*. Ortiz was anticipating permanent employment at PAC Worldwide. Ortiz stated that other than the position of packer, PAC Worldwide would sometimes send her to "sweep" if they were short-staffed. *Id*. This entailed putting plastic into a machine to create balls to reuse for packing. *See id*. at 21-22. Ortiz had worked with Adecco since 2017 to find work. *See id*. at 23. Adecco had placed her at multiple companies. *See id*.

When Ortiz was assigned to PAC Worldwide, she had a supervisor on her shift who told her what to do. *See id*. at 24-25. There was also a machine operator who Ortiz referred to for any issues with the machine or envelopes getting stuck in the machine. *See id*. at 25. No one from Adecco gave Ortiz any guidance or exerted any control over her while she was at the Facility. *See id*. Further, no one from Adecco told her how to do her job at PAC Worldwide. Ortiz affirmed that the PAC employees, or people associated with

PAC Worldwide, were the ones to supervise her while she was at the Facility. *See id*. at 25-26.

Ortiz stated that PAC Worldwide did not provide her with any tools or equipment or give her any safety training. *See id*. at 26. However, when asked about general training, Ortiz testified that for a half-hour to one hour on her first day, a PAC employee explained to her how to pack the envelopes. *See id*.

Adecco did not give any instruction on how to perform the job at PAC. *See id*. at 27. Adecco only told her generally what the job consisted of and what the pay rate was. *See id*. Then it was up to Ortiz whether to take the job or not. *See id*. After accepting the job, Ortiz would go directly to PAC Worldwide each workday. *See id*. There were no Adecco supervisors or managers at the Facility. *See id*. at 28. Ortiz had a contact number for someone at Adecco that she could call for any issues, including needing to call out of work. *See id*. at 28-29.

Prior to starting the job at PAC Worldwide, Adecco informed Ortiz of the days, hours, and rates of the work for PAC Worldwide. *See id*. at 29. After starting the job, PAC Worldwide would give her a schedule each week with the days she had to work. *See id*. If she wanted to take any overtime hours, Ortiz would speak with her supervisor, a PAC employee, to ask for the opportunity. *See id*. at 29-30. Ortiz's paychecks and worker's compensation benefits came from Adecco. *See id*. at 30-31. When Ortiz got to the Facility, a supervisor

from PAC Worldwide told her what to do. ***See id***. at 32. Ortiz did not know if PAC Worldwide had the ability to terminate her. ***See id***.

Ortiz explained that her job involved "coming in, packing Amazon envelopes, the one with the – it looks like it has the smiley face, the yellow envelopes, and putting it in a box, and just putting the label, and out it goes. It goes onto a pallet." ***See id***. at 32-33. Ortiz was standing at the end of the conveyor belt of the machine, and her job was to pick up a certain number of envelopes at a time from the conveyor belt after they had been made on the machine and place them in a box. ***See id***. at 35-36. Ortiz testified this is the job she performed during the approximately three months she worked at PAC Worldwide. ***See id***. at 33. After the incident occurred, her supervisor called the head supervisor of PAC Worldwide and someone from PAC Worldwide then called Adecco. ***See id***. at 39.

The situation here is akin to the facts of ***JFC Temps, Inc***. There, our Supreme Court held that a truck driver was the employee of the company to which he was temporarily assigned, even though he was hired and paid by a temporary employment agency and reported to that agency when he was late or could not work. The company to which the driver was assigned told him what truck to use and the destination to which he was to drive, decided whether his work was satisfactory, and could request a replacement if dissatisfied with his work, and no representative of the temporary employment agency was ever at the company's facility. ***See id***. at 863-66.

Here, the undisputed evidence established that while Adecco hired and paid Ortiz, PAC Worldwide, and not Adecco, had the right to control Ortiz's work and the manner in which it was performed. Ortiz admitted that she was performing work at PAC Worldwide's facility during the work hours when she was injured and was within the course and scope of her employment at the time of the accident. PAC Worldwide therefore clearly had the right to direct and control the work that Ortiz was performing when she was injured. There was no claim that Ortiz was operating under Adecco's direction or supervision in using the machine that injured her.

The test is whether PAC Worldwide had the right to direct and control Ortiz's work and the manner of its performance. **See id.** at 864. There was no conflict or ambiguity in the evidence on the issue of which company controlled the work and the manner of its performance. The testimony is clear that PAC Worldwide, not Adecco, had the right to control and direct Ortiz's performance. PAC Worldwide, as a matter of law, was therefore Ortiz's employer under the WCA and immune from personal injury tort liability.

Because the undisputed facts established that PAC Worldwide was Ortiz's employer under the WCA and was therefore immune from tort liability for Ortiz's injury, we affirm the trial court's grant of summary judgment in PAC Worldwide's favor.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/26/2024