# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patricia Duty and Debra Miller,    :
Individually and as Administrators    :
of the Estate of Jennifer Wright,    :
                       Petitioners    :
    :
           v.            : No. 1348 C.D. 2019
    : ARGUED: September 12, 2022
    :
Workers' Compensation Appeal Board    :
(Johnson Controls, Inc., Master Staffing,    :
LLC, Zurich American Insurance    :
Company and Arch Insurance Company),    :
                      Respondents    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED: October 19, 2022**

        The central issue in this case is which, between a temporary employment agency and the company to whom an employee was assigned (client company), was the employer for purposes of the Workers' Compensation Act.[1] Patricia Duty and Debra Miller (collectively, Claimants), on behalf of the two minor children of Jennifer Wright (Decedent), petition for review of the order of the Workers' Compensation Appeal Board affirming the decision and order of the Workers' Compensation Judge (WCJ), who granted Claimants' fatal claim petition against Johnson Controls, Inc. (JCI). The Board's order also affirmed the WCJ's

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

dismissal of Claimants' penalty petition and JCI's joinder petition against Master Staffing, LLC. It is the prevailing Claimants who seek to shift liability for benefits to Master Staffing; JCI has accepted liability for benefits.

Before proceeding with a recitation of the facts, we believe it necessary to identify the "elephant in the room" of this case, referred to obliquely by the WCJ as the "impact this determination has on matters beyond the realm of workers' compensation benefits," (WCJ Decision at 20, n.6). That is the potential for a third-party wrongful death suit by Claimants against JCI, which would obviously be precluded by the Act if JCI is held to be the employer. *See* Section 303 of the Act, 77 P.S. §481 (relating to exclusiveness of remedy and actions by and against a third party). Claimants as much as acknowledge this in their brief, alleging that JCI only accepted liability "because [it was] trying to avoid liability in a wrongful death claim." (Claimants' Br. at 20.)

The relevant facts as found by the WCJ, which Claimants do not dispute, are as follows. Decedent was hired by Master Staffing, a temp agency, which referred her as a potential worker to JCI, a client company manufacturing air-handling equipment. JCI accepted Decedent as a worker and controlled her activities during the workday at its facility for the approximately three months she worked there. On July 27, 2016, Decedent was crushed to death by an air conditioning unit while working for JCI. Both JCI and Master Staffing were aware of the death on the date it occurred, and Gallagher Bassett, Master Staffing's workers' compensation insurance carrier, was notified and initiated a file. Despite Claimants' allegation that

Arch Insurance Company is JCI's workers' compensation insurance carrier,[2] Gallagher Bassett has handled the claim since Decedent's fatality.

On June 9, 2017, Claimants filed a fatal claim petition against JCI seeking payment of medical bills, burial expenses, and dependent benefits for Decedent's children. JCI initially denied the allegations in its answer to the fatal claim petition. Claimants also filed a petition for penalties against JCI, alleging that it had failed to accept or deny the claim within twenty-one days, which JCI also denied. JCI filed a joinder petition alleging that Master Staffing might have been Decedent's employer, which Master Staffing denied in its answer.

In August 2017, JCI's position changed and it indicated a willingness to accept liability for the fatal claim petition, offering a stipulation to that effect which Claimants refused to sign—having changed their own position, asserting at that point that Master Staffing was the proper employer. Claimants have never filed a fatal claim petition against Master Staffing or filed a petition for joinder against that company.

After a hearing on the merits and the submission of deposition testimony and other evidence, the WCJ circulated his decision, which concluded that JCI was Decedent's borrowing employer at the time of her death. The WCJ noted that while Decedent signed various Master Staffing documents describing it as the employer and Decedent as the employee, the parties were not bound by their characterization of the relationship. The WCJ further found that while payment of wages, withholding of payroll deductions, and provision of workers' compensation insurance—all of which were handled by Master Staffing—may be considered as

---

[2] In its brief, Arch Insurance Company argues that it is not a proper party to the litigation and asks to be dismissed. Neither the WCJ nor the Board addressed that issue. As Arch has not filed a cross-appeal, the issue is not properly before us.

factors in determining the employer, they are not determinative of the identity of the actual employer. The WCJ found that while Decedent was sent to JCI by Master Staffing, JCI interviewed her and could have refused the referral; JCI could have requested Master Staffing no longer send Decedent to its facility and Master Staffing could not have overridden said request; JCI chose the work Decedent would perform; JCI trained Decedent to do that work; JCI supervised and evaluated Decedent in that work; JCI provided Decedent with the tools to perform that work; and JCI set Decedent's work hours. Thus, the WCJ found that JCI controlled the work Decedent was to perform and the manner in which Decedent performed that work, and therefore that JCI was the borrowing employer liable for payment of workers' compensation benefits arising from the fatal injury.

The WCJ found that while Master Staffing and JCI had each committed a violation of the Act when they failed to issue a timely notice accepting or denying the claim, no penalties were due or payable as a result of those violations. The WCJ explained that Master Staffing, through its insurer, had timely paid statutory funeral expenses in the amount of $3,000 and was not the employer liable for payment of workers' compensation benefits, and thus that no penalties were due or payable as a result of the violation of the Act. The WCJ found that JCI had paid more than the statutory amount of funeral expenses; that in November 2016 Claimants were contacting the adjuster for Master Staffing regarding the payment of benefits to Decedent's children; that in June 2017, Claimants filed their fatal claim petition identifying JCI as Decedent's employer; and that by August 2017, JCI had prepared the ultimately unexecuted stipulation acknowledging itself as Decedent's borrowing employer and providing for payment of benefits to Decedent's children. The WCJ found that both JCI and Master Staffing had a reasonable contest during the

4

proceeding because there was a dispute among the parties in regard to the correct identity of the employer liable for payment of benefits. Thus, the WCJ found that no penalties should be awarded based upon what he deemed to be technical violations of the Act.

Claimants appealed to the Board, asserting that the WCJ erred by disregarding available evidence—specifically, sustaining an objection to the admission of insurance contracts between JCI and Master Staffing, which Claimants believe establish that Master Staffing was Decedent's employer. Claimants asked that Master Staffing and its responsible workers' compensation insurance carrier be ordered to pay indemnity, death benefits, and medical bills. Claimants also sought interest and a 50% penalty. The Board affirmed the decision and order of the WCJ.

On appeal, Claimants raise three questions as follows:[3]

(1) Whether the Board erred in affirming the decision of the WCJ who found that JCI was the employer and not Master Staffing, at the time of Decedent's death.

(2) Whether the Board erred as a matter of law, in finding Claimants' contention regarding the contractual relationship between Gallagher Bassett, JCI, and Master Staffing of little importance and precluding the contract from being marked and admitted into the evidentiary record.

(3) Whether the Board erred in affirming the decision of the WCJ who found a technical violation of the Act but did not award penalties.

(Claimant's Br. at 7.)

Claimants first argue that the WCJ and the Board erred in concluding that JCI was the borrowing employer. The borrowed servant (or employee) doctrine

---

[3] We have paraphrased the questions presented for the sake of concision.

5

is applicable when one employer loans an employee to another employer. The test for determining whether an employee furnished by one person to another becomes the employee of the person to whom she is loaned is whether she passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it. *JFC Temps, Inc. v. Workers' Comp. Appeal Bd. (Lindsay)*, 680 A.2d 862, 864 (Pa. 1996). The question of whether and with whom an employer-employee relationship exists is one of law, based upon findings of fact. *See id.* Each case must be decided on its own facts. *Daily Express, Inc. v. Workmen's Comp. Appeal Bd. (Chamberlain)*, 406 A.2d 600, 601 (Pa. Cmwlth. 1979).

Claimants argue that the finding that Decedent was a borrowed employee was based mainly on the fact that the WCJ found JCI controlled the work to be done by Decedent and the manner in which Decedent performed the work. Control, Claimants argue, was merely one factor to be considered. To that end, they maintain that the WCJ disregarded substantial evidence that Master Staffing retained the right to terminate Decedent's work; that JCI had no ability to hire or fire Decedent without permission from Master Staffing; that JCI could not have hired Decedent without incurring a penalty or fine from Master Staffing; that Master Staffing paid Decedent's wages at an hourly rate and carried workers' compensation insurance for Decedent; that Master Staffing placed Decedent at JCI's facility based upon her skill set and physical abilities; and that Master Staffing maintained the right to discharge Decedent from the JCI facility and send another individual in her place.

Claimant cites our Supreme Court's holdings in *Mature v. Angelo*, 97 A.2d 59 (Pa. 1953), a leading case on the borrowed servant doctrine, asserting that it stands for the proposition that there are "factors" other than control which may be

6

relevant in determining whether an employee is borrowed. (Claimant's Br. at 9-10.) In *Mature*, Justice Stern identified seven principles to be followed in determining whether an employee is borrowed, including the following relied upon by Claimant:

> 5.   Facts which indicate that the servant remains the employe[e] of his original master are, among others, that the latter has the right to select the employe[e] to be loaned and to discharge him at any time and send another in his place, that the lent servant has the skill of a technician or specialist which the performance of the work requires, that the hiring is at a rate by the day or hour, and that the employment is for no definite period.

*Mature*, 97 A.2d at 61. *Mature* proceeded to state that:

> 6. The mere fact that the person to whom a machine and its operator are supplied points out to the operator from time to time the work to be done and the place where it is to be performed does not in any way militate against the continuance of the relation of employe[e] and employer between the operator and his original master.

*Id.* However, the import of those facts/factors are in the context of "the crucial test," which remains control of the work to be done and the manner in which it is done:

> 2. The crucial test in determining whether a servant furnished by one person to another becomes the employe[e] of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done *but also to the manner of performing it*.
>
> 3. A servant is the employe[e] of the person who has the *right* of controlling the manner of his performance of the work, irrespective of whether he actually *exercises* that control or not.
>
> 4.   Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and

7

furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer *in fact* assumes control of the employe[e]'s *manner of performing the work*, the servant remains in the service of his original employer.

*Id.* at 60-61 (emphasis in original; citations omitted).[4]

*Red Line Express Company v. Workmen's Compensation Appeal Board (Price)*, 588 A.2d 90 (Pa. Cmwlth. 1991), also cited by Claimants, concerned two workmen's compensation claims by a truck operator against the lessor of the truck, with whom she had an employment contract, and the lessee. There, in holding that the lessor of the truck remained the claimant's employer, we stated that notwithstanding the provisions of the lease, which tended to indicate that the lessor was the employer, "the determining factor is the actual conduct of the parties and whether [the lessee] actually had the power to control [c]laimant's work and manner

---

[4] The other principles identified by Justice Stern in *Mature* are as follows:

> 1. One who is in the general employ of another may, with respect to certain work, be transferred to the service of a third person in such a way that he becomes, for the time being and in the particular service which he is engaged to perform, an employe[e] of that person.
>
> . . . .
>
> 7. Where the facts are not in dispute, and the evidence leaves no sufficient ground for inconsistent inferences therefrom, the question as to who is the servant's employer is a matter for the determination of the court, but, where the evidence presents an issue of fact, or different inferences can reasonably be drawn therefrom, the question is one for determination by the jury.

*Mature*, 97 A.2d at 60-61.

8

of performance." *Id.* at 94 (citing *Mature*). While *Red Line* discussed the principles set forth in *Mature* and summarized by this Court in *Daily Express*,[5] we stated that "of most significance to the present case is that the facts show that [the lessee] did

---

[5] *Daily Express* contains the following summary of the principles set forth in *Mature*:

> We summarize those principles as follows: (1) one who is in the general employ of one employer may be transferred to the service of another in such a manner that he becomes an employee of the second employer; (2) whether or not the transferred employee becomes the employee of the second employer depends on whether the first employer passes to the second employer not only the right to control the employee's work, but also his manner of performing it; (3) it is enough to establish the employer-employee relationship if the employer has the right to control the employee's manner of performance of work, regardless of whether the right is ever exercised; (4) where one is engaged in the business of renting out trucks and furnishes a driver as part of the hiring of the truck, there is a presumption that the driver remains in the employ of his original employer until there is evidence that the second employer in fact assumed control over the employee's manner of performing his work; (5) facts which indicate that an employee remains in the service of his original employer include the original employer's right to select the employee to be loaned and to discharge him at any time and send another in his place, the loaned employee's possession of a skill or special training required by the work for the second employer, and employment at a daily or hourly rate for no definite period; (6) the fact that the second employer designates the work to be done and where it is to be done does not militate against the first employer-employee relationship; and (7) when the facts are undisputed, the determination of who is the employee's employer is one of law, but when the facts are disputed, the determination is one of fact.

406 A.2d at 601-02.

9

not have the power to control the [c]laimant's manner of performing her work." *Id.* at 96.[6]

Our Supreme Court's most recent pronouncement on the borrowed servant doctrine, *JFC Temps*, held that "the right to control the performance of . . . work is the overriding factor," notwithstanding that "some factors weigh[ed] against finding [the client company] the responsible employer." 680 A.2d at 865. In *JFC Temps*, a temp agency sent a worker to a client company to operate a tractor-trailer, during the course of which he was injured. The key facts cited in the Court's determination of control by the client company were that it directed the claimant regarding the specifics of deliveries to be made; that the claimant reported to the client company daily and returned at the end of each work day; that the claimant performed miscellaneous odd jobs under the direction of the client company's personnel; that the temp agency was never present at the work site; and that although the temp agency paid the claimant, the client company completed time slips and evaluated his performance. *Id.*

Here, the WCJ found based on credible testimony that JCI instructed Decedent as to how to perform her job duties at its facility; that JCI could and did direct Decedent as to when her shift started, when to take breaks, and which department she would work in on a particular day; that JCI provided the equipment, uniforms, and safety gear that Decedent needed to perform her job duties at its facility; that JCI determined if Decedent was performing the work properly or if any

---

[6] Claimant's brief contains a purported quotation from *Red Line* to the effect that "there must be a transfer of control to the borrowing employer of the right to select, hire, and fire, and the mere transfer of the right to control the manner in which the work is performed may not be sufficient for the borrowing employer to become the employer under the Act." (Claimant's Br. at 10.) *Red Line* contains no such quote and cannot be fairly said to stand for the proposition that control of an employee is not, in fact, the most significant factor in the determination of whether an employee is borrowed or not.

10

disciplinary issues needed to be addressed; and that Decedent contacted JCI directly if she had to call off work and required a JCI employee's permission to take off. Master Staffing had no representatives present at the JCI facility and provided no input concerning the Decedent's day-to-day activities performed there. Based upon these findings, we conclude that the Board did not err in affirming the decision of the WCJ with respect to JCI being Decedent's borrowing employer.

Next, Claimants argue that the Board erred in affirming the WCJ with respect to his evidentiary ruling finding that insurance contracts entered into among the parties were not relevant. Claimants argue that this constituted a capricious disregard of evidence that prevented them from establishing the correct employer/insurance carrier. Claimants insist that this, in turn, altered the parties' litigation strategy in such a way that unfairly advantaged JCI by preventing third-party liability.

We do not believe that the identity of the insurer is relevant to the central inquiry of this case—who had the right to control the manner of Decedent's work. Further, Claimants' reliance on *Manolovich v. Workers' Compensation Appeal Board (Kay Jewelers)*, 694 A.2d 405 (Pa. Cmwlth. 1997), for the proposition that an employer and an insurance carrier are a single combined entity is misplaced. That case stood for the requirement that the "combined entity" cannot ignore a claim because of a failure of the Board to properly serve the insurer, not that a borrowing employer cannot, by contract, arrange for workers' compensation coverage through a lending employer. To the contrary, our sister Court has held that the fact that a lending employer pays for such insurance is no impediment to finding that the borrowing employer is immune from suit pursuant to Section 303 of the Act. *Supp v. Erie Ins. Exch.*, 479 A.2d 1037, 1041 (Pa. Super. 1984). The provision of workers'

11

compensation coverage may be considered but is not a determinative factor of whether an employee is borrowed. *Id.*

Finally, Claimants argue that the Board erred in affirming the WCJ in denying their petition for penalties against JCI under Section 435(d)(i) of the Act, 77 P.S. § 991(d)(i). Claimants assert that they are being penalized because the WCJ weighed JCI's willingness to enter a stipulation admitting liability as a reason for denying sanctions, which they maintain was improperly motivated by JCI's desire to avoid third-party liability. We understand Claimants' disappointment with being limited under Section 303 to recovery of workers' compensation benefits. However, we do not believe that the WCJ abused his discretion, which must be found to overturn the denial of penalties. *See Carroll v. Workers' Comp. Appeal Bd.*, 898 A.2d 1210, 1212-13 (Pa. Cmwlth. 2006).

In light of the foregoing, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita


Judge Fizzano Cannon did not participate in the decision for this case.

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patricia Duty and Debra Miller,     :
Individually and as Administrators     :
of the Estate of Jennifer Wright,     :
           Petitioners     :
    :
        v.     : No. 1348 C.D. 2019
    :
Workers' Compensation Appeal Board     :
(Johnson Controls, Inc., Master Staffing,     :
LLC, Zurich American Insurance     :
Company and Arch Insurance Company),     :
           Respondents     :

## O R D E R

AND NOW, this 19th day of October, 2022, the Order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita